Argued May 7, decided Aug. 17, rehearing denied Oct. 26, motion to recall
mandate denied Dec. 7, .1909.

## ZEUSKE v. ZEUSKE.

[103 Pac. 648; 105 Pac. 249.]

EJECTMENT—EQUITABLE DEFENSES—ANSWER—CROSS-BILL.

1. Section 391, B. & C. Comp., provides that a defendant at law entitled
to equitable relief may on filing his answer also file a complaint in the
nature of a cross-bill, which shall stay the proceedings at law, and the case
shall thereafter proceed as a suit in equity in which the proceedings at law
may be perpetually enjoined or allowed to proceed. Section 392 declares
that a suit shall only be commenced within the time to commence an action
at law, and that a suit to determine any right to real property shall be
deemed within limitations provided for actions for the recovery of posses-
sion, except that the section shall not bar an equitable owner of the right
to defend by means of his equitable title. Held, that Section 392, construed
in connection with Section 391, authorized a defendant in ejectment to de-
fend his possession by ·means of an equitable right by a cross-bill only and
not by answer.

EJECTMENT—DEFENSES—CONTRACT OF PURCHASE.

2. A vendee in possession under a written contract of purchase, when
sued at law in ejectment, may defend his possession by such written con-
tract as a legal defense.

FRAUDS, STATUTE OF—DEFENSES—ORAL CONTRACT OF SALE.

3. An oral contract for the sale of real property being unenforceable at
law under the statute of frauds, a vendee in possession thereunder cannot
urge the same as a valid defense at law in ejectment.

FRAUDS, STATUTE OF—SALE OF REAL ESTATE—ORAL CONTRACTS—ESTAB-
LISHMENT.

4. An oral contract for the sale of realty, unenforceable under the stat-
ute of frauds at law, cannot be availed of by the vendee until established
by suit in equity.

ESTOPPEL—EQUITABLE ESTOPPEL—PERMITTING IMPROVEMENTS AND EX-
PENDITURES.

5. Equitable estoppel cannot be based on an oral contract for the sale of
real property, though the vendee is in possession and has made valuable
improvements and payments thereunder.

EJECTMENT—EQUITABLE DEFENSES—ESTOPPEL—ORAL CONTRACT.

6. A vendor's agreement that he will convey on fulfillment of the terms
of an oral contract of sale is not a representation of fact, nor is his knowl-
edge of defendant's possession without protest and his making valuable
improvements sufficient to create an equitable estoppel precluding such
vendor from repudiating the contract and recovering possession at law.

EJECTMENT—EQUITABLE DEFENSES—ANSWER.

7. Section 325, B. & C. Comp., declares that actions in ejectment shall
be conducted to a determination according to the provisions of the Code,
except as "herein otherwise provided." Section 326 provides that plaintiff,
to maintain such action, must have a legal estate ·'and a present right to
the possession,"· and Section 328 requires, in addition, that it appear that
defendant is "wrongfully" in possession. Section 329 provides that the
defendant shall not be allowed to prove any estate in himself, or another in

Sig. 3

the property, or any license or "right to the possession thereof, unless the same be pleaded in his answer, and, if so pleaded, the nature and operation of such right to possession shall be set forth with the certainty and particularity required in a complaint," and Section 330, subd. 2, provides that a verdict in ejectment, if for defendant, may declare the right by which possession is maintained "in effect as the same is required to be pleaded." *Held,* that defendant in ejectment may defend his right to possession under such sections by pleading an equitable right thereto in his answer. (Per Mr. Justice King, dissenting.)

COSTS—COSTS ON APPEAL—STATUTES.

8. Section 568, B. & C. Comp., as amended by Laws 1903, p. 209, providing that the statement of disbursements may. be filed with the clerk at any time after five days from the filing of the decision, but not later than the first day of the next regular term of court after such five days, does not apply to the taxation of costs in the Supreme Court.

APPEAL AND ERROR — JUDGMENT OF SUPREME COURT — REHEARING — EFFECT.

9. A judgment of the Supreme Court is final when the opinion is handed down, and a motion for rehearing, if filed, only suspends the judgment from the date of filing.

COURTS—RULES—JURISDICTION TO ESTABLISH.

10. The Supreme Court has power to prescribe proper rules for the transaction of business.

COSTS—COSTS ON APPEAL—TAXATION—TIME.

11. Supreme Court rule 24 (50 Or. 582 ; 91 Pac. xi) provides that on the disposition of a petition for rehearing, or if, within 20 days after final judgment or decree, no petition shall have been filed, the clerk, as a matter of course, unless otherwise directed by the court, shall issue and forward a mandate to the clerk of the court below. Rule 28 declares that no costs shall be taxed unless the cost bill shall be filed before the mandate is issued. *Held,* that since, on the issuance of a mandate, the Supreme Court loses jurisdiction of the case, where no cost bill is filed within the 20-day period or before the issuance of a mandate, the successful party could not have the mandate recalled to file cost bills.

From Umatilla: HENRY J. BEAN, Judge.

Statement by MR. JUSTICE EAKIN.

This is an action of ejectment by August Zeuske against Emma Zeuske, who is in possession of the premises as administratrix of the estate of Edward Zeuske, deceased, who was a son of the plaintiff. On November 19, 1897, plaintiff acquired title to the lands in dispute, consisting of 320 acres, by purchase from the First National Bank of Pendleton, for the consideration of $3,700.

As a defense to the action, the defendant alleges that at that time plaintiff and his wife entered into an agreement with Edward Zeuske that, in consideration of love

and affection, and the repayment of the said purchase price without interest, they would convey said premises to him, and that thereupon, pursuant to said agreement, and with the knowledge and consent of the plaintiff and his wife, said Edward Zeuske entered into the possession of said premises and thereafter occupied the same under a claim of ownership, and adversely to the plaintiff, until the time of his death in June, 1908, and made permanent improvements thereon to the value of $1,500, with the knowledge of plaintiff, and paid to the plaintiff the amount of the said purchase price, and thereupon demanded from plaintiff a deed therefor, which plaintiff has failed to deliver to said decedent; that defendant is the widow of decedent, and that he left surviving him his son, George Edward Zeuske, born January 10, 1907, and that defendant is, and was since the 15th day of June, 1908, the duly appointed and acting administratrix of the estate of the decedent. These facts are all pleaded as a defense to the action, and also as an estoppel against plaintiff. The cause was tried before a jury, and at the close of the defense, plaintiff asked the court to direct a verdict for plaintiff, for the reason that the defense relied on is an oral contract of purchase and within the statute of frauds, which motion was denied by the court, and a verdict rendered in favor of defendant. From judgment rendered thereon, plaintiff appeals.

REVERSED.

For appellant there was a brief over the names of *Mr. Joseph T. Hinkle* and *Messrs. Lowell & Winter* with oral arguments by *Mr. Stephen A. Lowell* and *Mr. John P. Winter.*

For respondent there was a brief over the names of *Messrs. Fee & Slater* with oral arguments by *Mr. James A. Fee* and *Mr. Robert J. Slater.*

MR. JUSTICE EAKIN delivered the opinion of the court. (MR. JUSTICE KING dissenting.)

1. The defendant cites Section 392, B. & C. Comp. as authority for pleading an equitable title in defense of an action of ejectment. That section is a statute of limitation, and, so far as it relates to this question, reads as follows:

"A suit shall only be commenced within the time to commence an action as provided in Chapter 2 of Title I of this Code; and a suit for the determination of any right or claim to or interest in real property, shall be deemed within the limitations provided for actions for the recovery of the possession of real property; * * provided, this section shall not be construed so as to bar an equitable owner in possession of real property from defending his possession by means of his equitable title."

There are other provisions in the section which affect suits relating to United States and State patents to lands, authorizing an equitable defense in an action of ejectment brought by the patentee; but the proviso above quoted is the only portion of the section involved here, and by virtue of that proviso the statute of limitations cannot run against an equitable owner in possession so as to prevent him from defending his possession by means of his equitable title. In the cases of *Spaur* v. *McBee,* 19 Or. 76 (23 Pac. 818) and *Rowland* v. *McCown* 20 Or. 538 (26 Pac. 853). Mr. Justice STRAHAN refers to this proviso as an enlargement of the jurisdiction of courts of law; but in both cases it was mere dictum. Also, in *Coles* v. *Meskimen,* 48 Or. 55 (85 Pac. 67) where this statute was evidently relied on, Mr. Chief Justice BEAN passes it over with the statement that "an equitable defense cannot be pleaded in an action at law, unless, perhaps, that right is given by Section 392, B. & C. Comp., in actions to recover the possession of real property—a question we need not now consider." Therefore we consider the effect of that proviso an open question at this time.

Prior to 1866, Section 93 of the Civil Code of 1862
(Deady's General Laws, Chapter 1) provided that "a
material allegation in a pleading is one essential to the
claim or defense, and which could not be stricken from
the pleading without leaving it insufficient." In 1866
(Laws 1866, p. 12) this section was amended by adding
thereto the following language: "When the facts stated
in the pleadings present a case cognizable in a court of
law, the case shall proceed as an action at law. But if ·
the facts stated, either by the plaintiff or defendant, show
a case requiring the interposition of a court of equity,
the case shall proceed as a suit in equity." In *Delay* v.
*Chapman,* 2 Or. 245, it was held that this amendment
allows equitable titles to be set up against legal titles
in the same action, and virtually unites actions at law
and suits in equity in the same case, and was an effort
by the legislature to simplify judicial proceedings, and
the court gave it that effect. Four years later (Laws
1870, p. 29), this Section 93 was again amended, elimin-
ating the amendment of 1866, and as a part of the same
act Section 377, relating to modes of procedure in suits
in equity, was amended by adding thereto the following
language: "And in an action at law, where the defend-
ant is entitled to relief, arising out of facts requiring
the interposition of a court of equity and material to his
defense, he may, upon filing his answer therein, also as
·plaintiff, file a complaint in equity, in the nature of a
cross-bill, which shall stay the proceeding in law, and the
case thereafter shall proceed as a suit in equity. * *"
And these two sections remain unchanged, being Sections
96 and 391, respectively, of B. & C. Comp. On the same
day the legislature also amended Section 378 of the Code
of 1862 (Section 392, B. & C. Comp.), which fixes the
limitation of suits in equity, by adding thereto a special
limitation in suits affecting patents to lands issued by
the United States or by the State. This Section 378,

was again amended in the year 1878 (Laws 1878, p. 25) by adding the proviso hereinabove quoted.

From this history of the course of this legislation, it was evidently intended by the amendments of 1870 to limit the application of an equitable defense in an action at law to a cross-bill in which affirmative relief might be secured. In discussing the scope of the jurisdiction in the cross-bill provided for in Section 391, B. & C. Comp., in *S. P. L. Co.* v. *Munger,* 36 Or. 472 (60 Pac. 6) being a cross-bill to enjoin an action of ejectment, in which the defendant pleaded his equitable title, Mr. Justice WOLVERTON says that the cross-bill is an innovation on the common law, which prohibited the setting up of an equitable defense to an action at law, and quotes from *Hatcher* v. *Briggs,* 6 Or. 31:

"The general doctrine resulting from the best considered cases is that the defendant can defeat the action on equitable principles, and not only defeat the action, but secure affirmative relief, and that, as the defendant becomes an actor and the pleading an equity pleading, the sufficiency thereof in substance, though not in form, is to be determined by the application of the general rules of equity pleading, and that, as an equitable defense may be set up to a legal claim, it would be inconsistent to lay down the doctrine that, because one party is asserting a right under a legal form, equity will not protect the equitable rights of the other party to the same extent as though the proceeding was under equitable forms."

Thus a cross-bill is recognized as the appropriate remedy by which an equitable defense may be made available, and therefore the amendment of Section 392, above quoted, can only apply to an equitable defense to an action of ejectment set up in a cross-bill by a defendant in possession. Hence, as long as the defendant is in possession of the premises, he shall not by lapse of time lose his right to plead the equitable defense against' the legal title. This proviso of Section 392 does not by

its language pretend to extend jurisdiction at law, but only makes an exception to the limitation created by the section, on the assumption that there exists a right to defend the possession of real property by means of an equitable title, which right existed under Section 391, B. & C. Comp., only by cross-bill. Mr. Justice MCARTHUR, in *Hatcher* v. *Briggs,* 6 Or. 31, so construed this statute at page 40, where he says: "We regard Section 377 (Section 391, B. & C. Comp.) as providing for no more nor less than the equitable answers and cross-petitions allowed by the codes of those states where the distinction between actions at law and suits in equity is abolished." We conclude that Section 392 does not authorize an equitable defense to be set up by answer at law.

2. Defendant relies on two defenses: (1) The oral contract of purchase and part performance thereunder as sufficient to take the case out of the statute of frauds at law; and (2) he pleads the same facts as an equitable estoppel. Facts that would be sufficient in equity to take an oral contract out of the statute of frauds might not be sufficient to constitute an equitable estoppel either at law or in equity. Therefore these two defenses are independent of each other, though both are based on the same facts.

3. If the defendant's possession were under a written contract of purchase, and he was not in default, then his possession would be legal, and, if sued in ejectment, such contract would be a good defense at law; the contract being competent evidence of its terms, although plaintiff could not have specific enforcement of it in that action, and that being obtainable only in equity. This statement may be taken as conceded, and needs no citation of authority to sustain it.

4. The question then arises: Can an oral contract of sale of real property be alleged and proved at law in defense of his possession by the vendee? Such an oral

contract, under which, by authority of the vendor, the vendee has entered into possession, and has made payments and valuable improvements, must be established in equity before the vendee can predicate any rights thereon. The courts in many states permit the proof of an oral contract in defense of an action of ejectment, if the facts would be sufficient to entitle him to affirmative relief in equity, in a proceeding brought for that purpose; but such decisions, so far as the writer has found, are in states where the distinction between the courts of law and equity has been abolished, and there is but one form of action in which legal and equitable rights may be pleaded by either plaintiff or defendant. This is the case in New York, California, Nebraska, Missouri, Georgia, and several other states; and in some states, such as Virginia and West Virginia, in which the distinction between the courts of law and equity is still maintained, as in Oregon, the statute provides that in ejectment an equitable defense may be pleaded by answer. But, subject to these exceptions, we have found no decision that permits a defendant in possession of real property under an oral contract of purchase to defend his possession in an action of ejectment by means of such contract, for the reason that, by the statute of frauds, no evidence of such contract shall be received. Equity permits evidence of it in a suit for specific performance, on the ground of equitable fraud. Justice LORD, in *Wagonblast* v. *Whitney,* 12 Or. 83 (6 Pac. 399) in discussing this question, states the power of the equity court and the reasons for it as follows: "The ground of the jurisdiction is equitable fraud. It is based upon the just principle that when acts of part performance have been done in pursuance of and in reliance on the verbal contract, with the knowledge and consent of the other party, and the relations of the parties are so changed by reason thereof as to prevent a restoration to their former

condition, it would be a fraud, and encourage bad faith, to permit the statute to be interposed as a defense whereby one party would reap the benefit of the acts of part performance, and the other be left without any remedy, and liable for damages as a trespasser. * * Equity will not permit a party to retain an advantage thus gained upon the faith of a verbal agreement, while he repudiates its obligations under cover of a statute. In a word, it will not allow the statute to be used as a cover for fraud and bad faith." And this has always been recognized in Oregon as the only manner in which an oral contract for the sale of real property may be established, and it is only for such a purpose and in such a tribunal that evidence is admissible which the statute provides shall not be received. Defendant relies upon *Coles* v. *Meskimen,* 48 Or. 55 (85 Pac. 67), as holding that evidence of an oral contract may be received at law; but that case is decided upon the fact that the contract is "an executory contract," meaning a legal contract. The contract was practically admitted by the pleadings, and an offer to convey, was made in writing, and the plaintiff was defeated because she had not put defendant in default by tendering a deed.

5. Then we come to the question whether, under the facts alleged and proof offered, plaintiff is estopped from prosecuting the ejectment action, and is not equitably estopped from pleading title by reason of an oral contract for the sale of real property, even though the vendee is in possession and has made valuable improvements and payments thereunder. The estoppel, to constitute a defense of possession in such a case, either at law or in equity, depends upon representations that title has passed, or such conduct on the part of the plaintiff as justifies the possessor in assuming that he has a good title.

6. An agreement by the vendor that he will convey upon the fulfillment of the terms of sale is not a repre-

sentation of a present fact, nor is his knowledge, without protest, that defendant is in possession and making improvements, an element of estoppel. These things are contemplated by the agreement and done in pursuance of it, and therefore defendant was not misled to his injury. If defendant is in possession, and has fulfilled the contract, and made valuable improvements, he may in equity be entitled to a deed; but equity alone can establish that fact. *Dickerson* v. *Colgrove,* 100 U. S. 578 (25 L. Ed. 618) relied on by defendant, is not in point, as in that case there was an express waiver in writing of his title by the owner of the fee, which justified defendant in the belief that he had good title, and upon which he acted for many years. In *Kirk* v. *Hamilton,* 102 U. S. 76, (26 L. Ed. 79) the owner of the fee stood by, and by his conduct led the defendants to believe that they had acquired a good title at a judicial sale, by which defendants thought they had acquired a good title, and under which they acted for many years, and expended large sums of money in improvements. There are many other cases of the same character that might be cited; but these elements distinguish them.

The fact that the agreement for the sale was oral appeared only from the evidence, and the court admitted evidence of the agreement on the theory that such an agreement could be proved by a defendant in an action of ejectment in defense of his possession thereunder, and the instructions were based on the same assumption. It is not necessary to refer specifically to the evidence, or to the rulings thereon.

These rulings were error, and the judgment is reversed and the cause remanded for such further proceedings as may be proper and not inconsistent with this opinion.

REVERSED.

MR. JUSTICE KING delivered the following dissenting opinion.

7. I regard a judicial construction of Section 392, B. & C. Comp., not essential to a determination of this controversy. I think it not improper, however, to suggest that the judicial dictum alluded to in *Spaur* v. *McBee*, 19 Or. 76 (23 Pac. 818), and *Rowland* v. *McCown*, 20 Or. 538 (26 Pac. 853), when taken together with the express declaration in the section mentioned, to the effect that none of the provisions thereof shall be so construed as to bar an equitable owner in possession of real property from defending his possession by means of his equitable title, whatever may be the construction placed thereon, discloses not only an intention by the legislative department of our State to recognize such a defense, to the extent, at least, of permitting a defendant to maintain his possession in that manner—constituting thereby a legislative construction of the law as it existed prior to that time—but that in the opinion of the court at the time the decisions were rendered, such defense should be available; and this appears to be in consonance with the progressive spirit manifested by such eminent authority as Pomeroy in his unexcelled work on Code remedies (Sections 87-97, inclusive [3 ed.]), and also Smith's Leading Cases, vol. 2, p. 734. And it is well to note that the announcement of the rule upon the subject in *Spaur* v. *McBee* and *Rowland* v. *McCown* is entitled to more weight than is usually given to mere dicta. The question was there argued and presented, and, no dissent having been recorded to the views thus expressed by Mr. Chief Justice STRAHAN, we must presume that the views of that distinguished jurist were concurred in by each of the other members of the court, no less eminent, consisting of Justices LORD and BEAN. It amounts to more than a mere declaration of the views of the writer of the opinions, known as dicta or obiter

dicta; it is judicial dictum, for it is the expression of the views of at least a majority, if not of the entire court, upon a matter, which while possibly not essential to a decision, was presented, argued, and considered. Words and Phrases, p. 2051. Judicial dictum represents the views of the court upon questions deemed too clear to admit of discussion, and should accordingly not be disregarded without extraordinary reasons appearing therefor. Such declarations as to the law are, to say the least, very persuasive, and *nisi prius* courts and counsel, in absence of something to the contrary, usually act upon them. Thus far the declarations alluded to constitute the only judicial utterance of this court concerning the effect of that section of our Code, and it would seem that, after remaining for 18 years unquestioned by any judicial utterance to the contrary, it is reasonable to assume that the law as there enunciated has frequently been acted upon, and it might well be deemed a rule of property, and accordingly as *stare decisis.* 26 Am. & Eng. Enc. Law (2 ed.) 165, 171; *Kirby* v. *Boyette,* 118 N. C. 244, 254 (24 S. E. 18) ; *Florida Cent. Ry. Co.* v. *Schutte,* 103 U. S. 118, 143 (26 L. Ed. 327) ; *Buchner* v. *C. M. & N. W. Ry. Co.,* 60 Wis. 264 (19 N. W. 56) ; *Kane* v. *McCown,* 55 Mo. 181, 199; *Ocean Beach Ass'n* v. *Brinley,* 34 N. J. Eq. 438.

I think, however, that, independent of Section 392, our Code clearly recognizes the right to maintain in ejectment, for the purpose of retaining possession of real property, the defense relied upon in this action. Sections 325 to 330, inclusive, of B. & C. Comp., provide a procedure in such actions, and indicate what is necessary to be pleaded on the part of the defendant, and the character of the defense which may be asserted. Nor are any of the provisions in these sections inconsistent with any of the provisions of the statute considered in the majority opinion. For example, Section 391 merely gives

to the defendant the right, by cross-complaint, to require his claims to be determined in the equity forum, and makes such procedure essential in the event affirmative relief is desired or necessary. Under no rules of statutory construction can it be held, nor is it maintained, that either this section, or any of those alluded to, was intended to change the rules of procedure prescribed in Sections 325 to 330, inclusive, relative to ejectment. At any rate, the compilers of the Codes have never so construed them. It will be observed that Section 325 declares that actions in ejectment, from the commencement to the determination thereof, shall be according to the provisions of the Code, "except as herein otherwise provided." The next section provides that it shall be necessary to the maintenance of the action that the plaintiff have a legal estate "and a present right to the possession" of the property to be recovered; and section 328 requires, in addition thereto, that it appear that the defendant is wrongfully in possession. Section 329 clearly indicates that, if the defendant pleads it in his answer, he may defend his possession by showing "any license or right" thereto. If, therefore, any thing more is desired than merely to defend the possession attacked by plaintiff, he must be relegated to what is usually a long, tedious, cumbersome, and expensive method of litigation, by having to resort to the equity forum to "enforce one right and end one controversy."

Now, as pointed out, the statute expressly provides that, in order to maintain an action in ejectment, the plaintiff must (1) set forth the nature of his estate in the property, and (2) that it must appear that he is entitled to the immediate possession thereof, and (3) that the defendant wrongfully withholds possession of the same from him; and, as to the defendant, it declares, *inter alia,* that: "The defendant shall not be allowed to give in evidence any estate in himself * * or any license

or right to the possession thereof, unless the same be pleaded in his answer." The exception, "unless the same be pleaded in his answer," clearly implies that, in order to maintain his right of possession, the defendant may give in evidence any facts which may tend to disclose that his possession is not wrongful, and accordingly that plaintiff does not have "a present right" thereto. It thus appears that the plaintiff must not only show that he has the title to the property, but that he is entitled to the immediate possession thereof. True, proof of the legal title raises a presumption that he is entitled to such possession, and is ample to make a *prima facie* case; but when, in response thereto, it appears that the defendant is in the actual possession of the property, such occupancy is presumed to be rightful, requiring proof on the part of the plaintiff to overcome such presumption. In *Hoover* v. *King*, 43 Or. 281, 285 (72 Pac. 881: 65 L. R. A. 790: 99 Am. St. Rep. 754) it is distinctly recognized by this court that at least two issues are always involved in these actions, "one as to plaintiff's title, and the other as to his right to the immediate possession of the property in controversy," and "a finding and judgment adverse to him (plaintiff) on either issue" defeats the action. Again, Section 330, subd. 2, B. & C. Comp., recognizes this character of defense by making ample provision for verdicts in cases of this character by providing that the verdict, if for defendant, may declare the right by which possession is maintained "in effect as the same is required to be pleaded." It matters not whether such defense be termed "legal" or "equitable," for it is a right recognized by the statute, and the one upon which I understand defendant is here relying. See, also, Pomeroy's. Code Rem. (3 ed.) Section 88. The defendant asks no affirmative relief, nor does the verdict or judgment declare it. I entertain some doubt as to whether either the verdict or judgment conforms strictly with the

requirements of the statute (Section 330, subd. 2), in that they do not clearly state by what right defendant maintains possession; otherwise, I see no error in that respect.

It is stated in the majority opinion "that defendant relies on two defenses—the oral contract of purchase, and a part performance thereunder—as sufficient to take the case out of the statute of frauds at law. * ·*" I am unable to agree that this statement is in harmony with the record. The contract of purchase is pleaded in the answer, and facts are averred showing a full compliance therewith by defendant prior to the institution of the action; that possession was taken under it, $1,500 in improvements placed upon the land, and the purchase price fully paid; and that nothing remains to complete the transaction, in strict conformity with the agreement, except the formality of plaintiff's execution of the deed as agreed. And, giving to the evidence adduced by defendant the favorable effect which the jury was entitled to, the facts are that decedent, for a valuable consideration, purchased the property involved, and, relying upon the contract of purchase, entered into possession, improved the same to the extent of $1,500, and paid the purchase price in full—all of which it appears was performed under the oral contract of purchase. The defendant is administratrix of the estate of the decedent, and holds possession under and by virtue of such executed oral contract. Can it then be said that the possession of the defendant is wrongful, or that in the face of these facts the plaintiff is entitled to the immediate or any possession thereof? I think not. As I understand the majority opinion, it holds that defendant must fail because of her inability, under the statute of frauds, to offer proof of these facts. Proof of this character was by this court held admissible in *West* v. *Washington Ry. Co.,* 49 Or. 436 (90 Pac. 666) and *Sprague* v. *Jessup,* 48 Or. 211 (83 Pac. 145: 84 Pac.

802). True, these were suits in equity; but in view of
the provision in Section 329, allowing a defendant, if
pleaded, to "give in evidence any estate in himself, or
ancther in the property, or any license or right to the
possession thereof," why the necessity of applying a dif-
ferent rule respecting the proof of an executed contract
merely because it arises in an action at law, especially
when Section 329 has reference to such actions? Pos-
sibly, but not likely, there would be some justification for
this distinction if the contract were executory only; but
here the contract was completely executed, at least so far
as decedent was concerned, and defendant is in posses-
sion under it, leaving nothing to be done except the mere
formality of the execution of the deed by the plaintiff.
Such evidence, however, under the showing made in the
case at hand, would seem to be admissible in the absence
of the provisions alluded to in Section 329. Says Mr.
Pomeroy: "The essential elements of a contract are the
same in equity and at law. * * In construing and apply-
ing the statute of frauds, in determining what contracts
come within its scope, what memoranda are sufficient to
a sale by its requirements, and all other matters of detail,
courts of equity and of law adopt and follow the same
rules Even when equity seems to depart from or disre-
gard the statute, and especially in its enforcement of
verbal contracts for the sale of land which has been part
performed, it is only invoking the aid of its most salutary
principles for the purpose of carrying out the ultimate
objects of the statute. As the primary object of the stat-
ute is to prevent frauds, mistakes, and perjuries, by sub-
stituting written for oral evidence in the most important
classes of contracts, courts of equity have established the
principle, which they apply under various circumstances,
that it shall not be used as an instrument for the accom-
plishment of fraudulent purposes; designed to prevent
fraud, it shall not be permitted to work fraud. * * All

ordinary contracts which consist of an intentional offer on one side and an intentional acceptance on the other, resulting in a meeting of the minds upon the same terms, are thus governed by identical rules with reference to their creation in law and in equity." Pomeroy's Eq. Juris. (3 ed.) Sections 1293, 1294.

No one questions but that in this State adverse possession for the statutory period may be successfully maintained in ejectment, and may be established by parol against one holding a patent, warranty deed, or other evidence of title. Title may be thus acquired regardless of the good faith of the occupant, even by a trespasser. See authorities collated from this court on this point in *Gardner* v. *Wright,* 49 Or. 609, 627 (91 Pac. 286). Must the rights of a trespasser claiming by reason of his adverse claim for the statutory period be recognized as superior in law to one who, as in this instance, in good faith, under a contract of purchase, and by permission of the holder, enters into possession, complies fully with the terms of his agreement by paying the purchase price in full, and by reason thereof remains in possession? Yet such is the effect of the conclusion reached by the majority. In this action the pleadings and proof disclose that under this contract the decedent, together with the defendant, has held the premises actually, openly, and adversely to plaintiff under claim of ownership for more than the period prescribed by the statute of limitations, prior to the commencement of this action. It is pleaded and asserted as an estoppel, it is true; but it is sufficient for either purpose, and, unless the sections of the statute quoted must be held to require it, such proof would seem admissible without pleading such defense affirmatively. 1 Cyc. 1141; 7 Ency. Pl. & Pr. 340; 13 Ency. Pl. & Pr. 284. A showing of the 10 years' adverse possession alone is sufficient to give defendant a legal title such as to defeat plaintiff's action.

As stated by Mr. Newell, in his work on Ejectment (Section 110) : "A grant, sale, or gift of land by parol is void by the statute. But when accompanied by the actual entry and possession, it manifests the intent of the donee to enter and take as owner, and not as tenant; and it equally proves an admission on the part of the donor that the possession is so taken. Such possession is adverse. It would be the same if the grantee should enter under a deed not executed conformably to the statute, but which the parties, by mistake, believe good. The possession of such a grantee or donee cannot, in strictness, be said to be held in subordination to the title of the legal owner; but the possession is taken by the donee, as owner, and because he claims to be owner, and the grantor or donor admits that he is owner, and yields the possession because he is owner. He may reclaim and reassert his title, because he has not conveyed his estate according to law, and thus regain the possession; but until he does this, by entry or action, the possession is adverse. Such adverse possession, continued 20 years, takes away the owner's right of entry."

*Wilson* v. *Campbell,* 119 Ind. 286 (21 N. E. 893), is a case analogous as to both the law and the facts involved. The defendant there had entered under a parol contract of purchase from his father; the facts being almost identical with the case in hand. After his father's demise, and after the expiration of the time prescribed by the statute of limitations, an action was brought involving the rights acquired under the oral contract of purchase. In considering the law applicable thereto, Mr. Chief Justice Elliott observes: "The parol agreement, if valid between the immediate parties, cannot be successfully assailed by their heirs or grantees, even if fraudulent as to creditors. * * The defendant in this case relies upon possession under the parol agreement, and as that possession continued for 20 years, his title became one in fee

as completely as if there had been a conveyance when he entered into possession. * * The adverse possession under a claim and color of right gave him a complete and perfect title." In *Ward* v. *Cochran,* 71 Fed. 127, 131 (18 C. C. A. 1, 5). Judge Thayer states his conclusion thus: "By the great weight of authority it is now well settled that a vendee of land in possession under a parol contract of sale holds adversely to his vendor, at least from the moment that the contract of sale is executed on his part by the payment of the purchase money. After the payment of the purchase money, the vendee may certainly invoke the statute of limitations as a defense to a suit in ejectment brought by his vendor, provided he has been in possession for the statutory period. And even if he has not been in possession for such length of time as will render the statute available, he can very likely plead the contract of sale and the payment of the purchase money by way of estoppel, as a bar to an action of ejectment brought by the vendor." In the recent case of *Bowman* v. *Wade,* (decided by this court July 27, 1909) 54 Or. 347 (103 Pac. 72) it was maintained that because the claim therein involved a contract which extended beyond one year, or three years, evidence of the parol agreement to that effect under the statute of frauds was inadmissible; but this court unanimously held that, the contract having been fully executed by one of the parties thereto, parol testimony was admissible to establish the contract sued upon, notwithstanding it was offered in an action at law. If the transaction in that action was not within the statute of frauds, and oral testimony was admissible, why is not the same rule applicable here? The only difference is that in that case the statute of frauds was relied upon because the contract extended beyond the period of one year; while here it is asserted because the proof offered, relates to a right to possession of real property. The statute, if applicable at all, applies alike in both

instances; yet in *Bowman* v. *Wade* the proof is held proper, but rejected here.

I regard the decision of this court in the case of *Coles* v. *Meskimen,* 48 Or. 54 (85 Pac. 67), as conclusive on the questions here presented. No distinction is made in that case as to whether it was a parol contract or otherwise. In fact, the records disclose that the defendant held the possession under an oral agreement only partly performed. Mr. Justice BEAN, speaking for the court, in referring to the plaintiff therein, observes: "He must show not only that he has a legal estate in the property, but also a present right to the possession. Section 326, B. & C. Comp. Any matter therefore which goes to disprove the fact of a wrongful withholding is a legal defense, whether it shows defendant's interest in the premises to be legal or equitable." It is made clear therein that a party in possession may, for the purpose of shielding, or enabling him to maintain possession, plead and prove a parol contract either partly or fully executed, under which possession was rightly taken and held. The majority opinion seeks to distinguish this case; but I think the conclusion announced amounts to an extinction, rather than a distinction. That case appears clearly in point, is well reasoned, and sustained by eminent authority, and I believe it to be in full harmony with the letter and spirit of our statute. It is suggested that there the pleadings seem to admit the oral contract of purchase; but it was not decided on that theory. An examination of the records and briefs upon which the cause was submitted discloses that the point by which it is sought to distinguish this case from the one under consideration was not suggested. Taking this feature in connection with the language used in the opinion, it is clear that the conclusion there reached was based upon the theory that a partly performed parol executory contract of purchase is a good defense in an action in ejectment, by one in

possession claiming under it. In fact, the court, in passing upon the plea there relied upon to that effect, holds, without reference to the admission in the reply, that "the answer therefore stated a good defense." The conclusion as there announced, until overruled, is, accordingly, the law upon the subject. It cannot be classed as either obiter or judicial dictum; nor can the fact that the decision might have been put upon a different ground, existing in the case, from that mentioned, make it such. *Clark* v. *Thomas*, 51 Tenn. (4 Heisk.) 419, 421; *Kane* v. *McCown*, 55 Mo. 181, 199; *Union P. Ry. Co.* v. *Mason City R. Co.*, 128 Fed. 230, 236 (64 C. C. A. 348) ; *Railroad Companies* v. *Schutte*, 103 U. S. 118, 143 (26 L. Ed. 327.)

I fully concur in the views announced by counsel for respondent in their belief that it is an unexampled doctrine to hold "that a party by admitting in his pleading that he made an oral contract for the sale of land, and that such contract was never reduced to writing, thereby waives the protection of the statute. It is also a novel doctrine * * that a party need not have a cause of action when he files his complaint, that he can swear the defendant wrongfully withholds possession of his land, and can rely upon defendant coming into court, setting up a void oral contract, and then admit that he made that contract, and thus defeat his own right of recovery." And a recognition of such practice, it occurs to me, can but result in rewarding one who may have but little regard for the sanctity of an oath, and punish him who in his honesty, may admit an oral contract; in other words, he who makes an oral contract, and says so, takes the case out of the statute of frauds, and is bound by it, and must submit to a trial in ejectment, while he who makes a solemn oral agreement, but denies it, may keep both the purchase money and the land, unless his legal antagonist, in order to get justice, resorts to another forum than that in which plaintiff has proceeded against him. This

inequality, which in many instances may, and doubtless will, prove a rank injustice, is evidently one of the features that Section 325 to 330 of the statute were intended to avoid.

The plea of estoppel, relied upon, I think sufficiently pleaded and proved, and it constitutes a complete defense to this action. My views upon this subject cannot be more clearly stated than to quote from Warvelle, Ej., § 260, where that eminent author, after noting that at a very early period it became a rule of property in courts of equity that, where a man remains silent when good faith requires him to speak, he cannot afterwards be heard to deny that which his conduct unmistakably declared to be true, and upon the faith of which others have acted, observes:

"But while this doctrine originated in a court of equity, where it is freely applied to all species of property, it has also long been employed in courts of law in matters pertaining to chattels. There is, however, no good reason, at this time and under the rules of modern practice, why its application should be restricted in courts of law. As has been well said, protection against fraud is equally necessary, whatever may be the interest at stake; and there is nothing in the nature of realty to exclude those wise and salutary principles which are now adopted without scruple, in both jurisdictions, in the case of personalty. Wherefore we find a number of instances where a plea of equitable estoppel has been permitted to operate as a sufficient defense in an action of ejectment."

To the same effect, Smith's Leading Cases, vol. 2, p. 734.

For the reasons given, I feel impelled to record my dissent from the conclusion announced by the majority of my associates, and am of the opinion that the judgment of the court below should be affirmed.

Decided December 7, 1909.

## On Motion to Recall Mandate.

[105 Pac. 249.]

*Messrs. Fee & Slater* for the motion.

*Mr. Joseph T. Hinkle* and *Messrs. Lowell & Winter,* *contra.*

Mr. Justice Eakin delivered the opinion of the court.

This is a motion to recall the mandate issued to the court below, for the purpose of taxing the costs of this court. The cause was tried at Pendleton during the May term, 1909, decided at Salem August 17th. A petition for rehearing was filed and denied October 26th. The mandate was issued November 4, 1909. The cost bill was tendered to the clerk November 11th, who refused to file the same for the reason that it came too late.

8. If we were to adopt counsel's construction of Section 568, B. & C. Comp., which provides that "such statement of disbursements may be filed with the clerk at any time after said five days, but not later than the first day of the next regular term of the court occurring after the expiration of said five days," the refusal of the clerk to file the cost bill was proper, as it was not tendered within five days after the decree nor within the term.

9. It is held, in *Hammer* v. *Downing,* 39 Or. 524 (64 Pac. 651: 65 Pac. 17, 990: 67 Pac. 30), that the judgment of the Supreme Court is final when the opinion is handed down, and a motion for a rehearing, if filed, only suspends the judgment from the date of filing. However, this court has held, in *Heywood* v. *Doernbecher Mfg. Co.,* 48 Or. 369 (86 Pac. 357: 87 Pac. 530), that Section 568, B. & C. Comp., as amended by Laws 1903, p. 209, does not apply to the taxation of costs in this court. This holding was affirmed in *Allen* v. *Standard Box & Lumber Co.* 53 Or. 10 (98 Pac. 509), and *Sommer* v. *Compton,* 52 Or. 173 (100 Pac. 289), and, having re-examined these cases, we are confirmed in the opinions there expressed.

10. It being held that this section does not apply, we must rely on the rules of this court. In *Carney* v. *Barrett,* 4 Or. 175, this court, speaking by Mr. Justice MCARTHUR, says: "Under our system all courts have certain inherent powers to be exercised for the purpose of methodically disposing of all cases brought before them. They can establish such rules in relation to the details of business as shall best serve this purpose, having proper regard for the rights of parties litigant as guaranteed and recognized by the constitution and the laws. This principle is recognized in *Vanatta* v. *Anderson,* 3 Bin. (Pa.) 417, and *Gray* v. *Waln,* 2 Serg. & R. (Pa.) 253 (7 Am. Dec. 642), the decisions in which cases are approvingly referred to in 2 Reed's Blackstone, 439, 440." In *Coyote G. & S. M. Co.* v. *Ruble,* 9 Or. 122, Mr. Chief Justice LORD says: "Without the aid of any statutory regulation, it has been repeatedly decided that every court of record possesses the inherent power to establish and enforce rules for regulating the practice before it, not repugnant to any constitutional or legislative enactments." On the same page, he also says: "It may, then, be safely affirmed, in the absence of any legislative authority, that the Supreme Court has the inherent right to prescribe rules for the orderly conduct of its business not contrary to law; but, if this were questionable, the authority of 'every court of justice to provide for the orderly conduct of proceedings before it' is expressly conferred by the statute. Civ. Code, § 884, subd. 3." These cases are commented on and affirmed in the opinion by Mr. Justice MOORE in *State* v. *Birchard,* 35 Or. 485 (59 Pac. 468.)

11. This court has formulated rules for the orderly transaction of its business. Rule 24, 50 Or. 582 (91 Pac. xi) provides that: "Upon the disposition of a petition for rehearing or if within twenty days after final judgment or decree no petition shall have been filed, the clerk

shall, as a matter of course, unless he is directed by the court otherwise, issue and forward a mandate to the clerk below." Rule 28, 50 Or. 584 (91 Pac. xi) provides among other things, that: "Nor shall any costs be taxed unless the cost bill therefor shall be filed before the mandate is issued." If this were not the rule, mandates should not be issued until the close of the term, as, upon the issuance of the mandate, this court loses jurisdiction of the case.

Twenty days must elapse in every case between the rendering of the judgment and the issuing of the mandate, which is ample time to cover any emergency in filing cost bills, so that, in either event, the motion to recall the mandate must be denied, and it is so ordered.

REVERSED: REHEARING DENIED: MOTION TO RECALL MANDATE DENIED.