UNITED STATES, Appellee,

v.

Private First Class Ronnie PORTER, Jr., SSN 259–02–0891, United States Army, Appellant.

CM 436467.

U..S. Army Court of Military Review.

9 June 1978.

---

Captain John E. Caulking, JAGC, and Captain William L. Finch, JAGC, were on the pleadings for appellant.

Colonel Thomas H. Davis, JAGC, Lieutenant Colonel R. R. Boller, JAGC, Major Steven M. Werner, JAGC, and Captain Glen D. Lause, JAGC, were on the pleadings for appellee.

Before CLAUSEN, CARNE and COOK, Appellate Military Judges.

## OPINION OF THE COURT

COOK, Judge:

Appellant was convicted by a court with members of the possession, sale and transfer of heroin. All these crimes were alleged as violations of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934.

This case arose in West Germany. The heroin was discovered as the result of a search of on-post unit billets conducted on the basis of an authorization obtained from the Brigade Commander. The legality of

this permission was challenged at trial and this objection has been renewed on appeal. Appellant has also assailed the use at trial of DA Forms 4137, Evidence/Property Custody documents to establish the required chain of custody of the alleged heroin. He cites *United States v. Nault,* 4 M.J. 318 (C.M.A.1978), in support of this latter position.

### I

■ In response to the threshold contention that the issuing commander, because his position charged him with responsibilities for the maintenance of order and discipline, could not simultaneously act on a request for a search warrant with the required neutrality and detachment,[1] we cite appellant to the counter arguments contained in *United States v. Martin,* 3 M.J. 744 (N.C.M.R.1977),[2] which we find persuasive and dispositive.

### II

■ Appellant also disputes the validity of the search authorization because it was not reduced to writing. He bases his claim that a written authorization was required in this instance[3] on language contained in USAREUR Supplemental 1 to AR 190–22, 16 December 1971.[4] We do not believe that provision is applicable in the instant circumstances. The cited provision itself excepts "searches authorized without a search warrant" from its requirement for a written memorial. As this was a search of military billets it was one that a commander is per-

---

1. *See Johnson v. United States,* 333 U.S. 10, 13–14, 68 S.Ct. 367, 92 L.Ed. 436 (1948), and *United States v. Staggs,* 23 U.S.C.M.A. 111, 48 C.M.R. 672 (1974).

2. *Also see United States v. Kohler,* 4 M.J. 941 (A.F.C.M.R.1978).

3. Implicit in appellant's position is a recognition that a search of military billets is normally permissible without a written authorization. Paragraph 152, MCM, 1969 (Rev.). However, the United States Court of Military Appeals has expressed the view that it preferred these transactions be recorded. *See, e. g., United*

States v. Sparks, 21 U.S.C.M.A. 134, 44 C.M.R. 188 (1971).

4. "Page 2–1, paragraph 2–1, Commander's Authorization to Search . . . . . f. (Added) Authorization to conduct searches and seizures described in the basic regulation and this supplement, except those searches authorized without a search warrant, will be executed in writing on AE Form 1166 (Record of Authorization for Search) in accordance with the sample in annex A. AE Form 1166's available through normal AG publications supply channels."

mitted to authorize without a written warrant.[5]

Additionally, the "Purpose and Scope" paragraph of the regulatory supplement appellant is relying upon states, in relevant part, that it:

> establishes procedures governing the search of individual and family-type billets or quarters (as distinguished from unit or organization billets or quarters) . . . [6]

This, too, clearly denotes that the supplement was not intended to apply to a soldier's barracks room.

■ Also, assuming arguendo that authorization to conduct the search in question had to be evidence in the manner appellant asserts, based on the reasoning to be found in this Court's opinion in *United States v. Dillard,* 2 M.J. 955 (A.C.M.R.1976), we would hold that the appellant cannot successfully rely on this deviation from the regulation without a showing of substantial prejudice. Additionally, assuming the same premise, we note that the commander did accomplish an AE Form 1166 (Record of Authorization for Search) two days after he actually granted his permission, and further we observe that the regulation does not contain any language which specifies that the "required" form must be executed contemporaneously with the granting of the permission. Consequently we find no merit in this contention.

### III

■ At trial, the agent who discovered the heroin and the laboratory technician who performed the analysis were called to testify. In order to trace the fungible substance between these two individuals the trial judge admitted into evidence, over objection, two DA Forms 4137, Evidence/Property Custody documents. In footnote 7, *United States v. Nault, supra* at 320, Chief Judge Fletcher wrote:

> The proposition that a report showing the chain of custody of an alleged drug qualifies for the business records exception in a prosecution for possession of a substance in violation of a regulation simply flies in the face of paragraph 144*d* of the Manual for Courts-Martial, United States, 1969 (Revised edition). That evidentiary proscription excludes records made "principally with a view to prosecution." . . . [W]e are unwilling to . . . dissipate the plain meaning of the "view to prosecution" proscription in paragraph 144*d* as applied to the facts of this case.

Judge Perry concurred without reservation in the Chief Judge's opinion, while Judge Cook concurred in the disposition of the case, but disagreed at length with the proposition contained in the aforequoted footnote. As indicated by Judge Cook in his opinion, and confirmed by Senior Judge Jones of this Court in *United States v. Watkins,* 5 M.J. 612 (A.C.M.R.1978), Chief Judge Fletcher's views were dicta in the *Nault* case. Apparently, in the trial of that case a chain of custody document was never admitted in evidence and thus the issue of its admissibility was never before the appellate court. The appellant would have us invoke the dicta contained in footnote 7 to exclude the admission of the chain of custody document in this case, without which there would in all probability be a fatal failure of proof as to the identity of the contraband drug. This we decline to do.

We recognize that some courts have drawn a distinction between "obiter dictum" and a "judicial dictum"[7] which theory might afford us a basis upon which we could rationalize a determination to apply Chief Judge Fletcher's gratuitously created

---

5. Paragraph 152, MCM, 1969 (Rev.); Paragraph 29–4*b* (4), DA Pam 27–22, Military Criminal Law Evidence; *United States v. Hartsook,* 15 U.S.C.M.A. 291, 35 C.M.R. 263 (1965).

6. Paragraph 1–1, USAREUR Supplement 1 to AR 190–22, 16 December 1971.

7. *City of Detroit v. Public Utilities Commission,* 288 Mich. 267, 286 N.W. 368 (1939); *Chance v. Guaranty Trust Co. of New York,* 164 Misc. 346, 298 N.Y.S. 17 (Sup.Ct.1937); *Zeuske v. Zeuske,* 55 Or. 65, 103 P. 648 (1909); *Taylor v. Taylor,* 162 Tenn. 482, 40 S.W.2d 393 (1931); *In re Wehr's Will,* 247 Wis. 98, 18 N.W.2d 709 (1945).

rule. We prefer, however, to await the determination of a case by that Court in which this issue is squarely presented, fully argued, and specifically decided before we proceed to apply it in the myriad of drug prosecution cases that come before this Court for review, almost all of which rely upon this same type of proof. Before it finally decides this issue, we trust the United States Court of Military Appeals will reconsider the factors enumerated in both Judge Cook's and Senior Judge Jones' decisions.

### IV

The findings of guilty and the sentence are AFFIRMED.

Chief Judge CLAUSEN and Senior Judge CARNE concur.