UNITED STATES, Appellee,

v.

Michael F. NAULT, Private, U. S. Army, Appellant.

No. 33,042.
SPCM 11819.

U. S. Court of Military Appeals.

April 3, 1978.

*Captain Donald R. Jensen* argued the cause for the Accused, Appellant. With him on the brief were *Colonel Alton H. Harvey, Lieutenant Colonel John R. Thornock, Captain Buren R. Shields, III,* and *Captain John R. Osgood.*

*Captain Richard A. Cefola* argued the cause for the Appellee, United States. With him on the brief were *Colonel Thomas H. Davis, Major John T. Sherwood, Jr.,* and *Captain John F. DePue.*

Opinion of the Court

FLETCHER, Chief Judge:

While in a state of apparent intoxication, the appellant was apprehended for kicking and damaging the door of a Chief Warrant Officer's quarters. Pursuant to his detention, he was searched by Sergeant Capps, a military policeman, who discovered a small pill which was pink or purple in color. Sergeant Capps purported at trial to identify a pill marked prosecution exhibit 3 as the same pill found on the appellant and testified that after discovering the pill in the first instance he released it to the acting evidence custodian, Sergeant Harrell. Sergeant Harrell was not called to testify, nor was any other evidence offered by the government to indicate the circumstances surrounding the preservation and custody of the pill while in his possession. The primary evidence custodian, Sergeant Sperry, testified that he received prosecution exhibit 3 from Sergeant Harrell, mailed it by registered mail to the crime laboratory at Fort Gordon, Georgia, and, upon receipt of the same by return mail, placed it back in the evidence depository under his control. Prosecution exhibit 4, the report of chemical analysis, was received at the same time. At trial, defense counsel unsuccessfully objected to the introduction of both exhibits on the ground of faulty chain of custody. We granted review to examine the propriety of the trial judge's ruling regarding these exhibits.

The special court-martial resulted in the appellant's conviction of failure to repair,[1] breaking restriction,[2] willfully damaging military property,[3] and possession of Lysergic Acid Diethylamide (LSD).[4] The court below found sufficient evidence to support all but the willful damage charge, for which they approved the lesser included offense of negligent destruction of military property. That court also approved the other charges and a sentence including a bad-conduct discharge and confinement at hard labor for 3 months.

After the testimony of the aforementioned custodial handlers, the government, to meet its burden of proof regarding Additional Charge IV, offered into evidence both the pink pill (prosecution exhibit 3) and a laboratory report (prosecution exhibit 4) purporting to identify the substance in the pill as LSD.

The in-court identification of pills and other fungible items by a competent witness is generally not permitted where the item is neither readily identifiable, marked distinctively, nor possessed of individuated characteristics.[5] Certainly the attempt in this case to establish the identity of the pill by positive witness identification was ineffective.[6] Generally fungible evidence becomes admissible and material through a showing of continuous custody which preserves the evidence in an unaltered state. *United States v. Jones,* 404 F.Supp. 529, 542 (D.C.E.D.Pa.1975); *United States v. Bass,* 8 U.S.C.M.A. 299, 24 C.M.R.

1. Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886.

2. Article 134, UCMJ, 10 U.S.C. § 934.

3. Article 108, UCMJ, 10 U.S.C. § 908.

4. Article 92, UCMJ, 10 U.S.C. § 892.

5. McCormick's Handbook of the Law of Evidence (2d edition, 1972) § 212.

6. The fragments offered for identification at trial manifestly did not represent the whole of the seized pill: prosecution exhibit 4 indicated that two-thirds of the pill was dissipated in testing. Hence Sergeant Capps' testimony that one-third of the pill ". . . appears to be in approximately the same size" rather more calls identity into question than establishes it.

109 (1957). This may be shown by having the testimony of the handlers of the fungible goods produced in court. In *Bass* there was a failure to call a Private First Class May, a handler of certain evidentiary samples which were in his possession for less than 24 hours. His predecessor in the chain of custody testified about seals made of paraffin and adhesive tape as well as etching his initials on the samples. Private May's successor in the chain testified to the intact seals noted upon receipt. This, coupled with the absence of suggestions of tampering, ". . . successfully bridged the gap created by the failure of May to testify." *Id.* at 305, 24 C.M.R. at 115.

■■ Here the government traced Sergeant Capps' custody to that of Sergeant Harrell by means of Capps' testimony. The testimony of Sergeant Sperry traced custody from Sergeant Harrell to himself, then the mailing to and return from the Fort Gordon laboratory. Sergeant Harrell was not called to testify but the record of trial indicates he possessed the pill for a four day period. Thus the government, in tracing the custodial chain during police investigative care, has failed to provide an essential link: the disposition of the proffered item while in Sergeant Harrell's possession. Unlike *Bass* the record is devoid of any indication of distinctive seals or unusual identifying marks associated with the item. Moreover, there is nothing in the record of trial to show that this proffered evidence was kept intact and was untampered with during the period of time it was in Sergeant Harrell's possession. *See id.* at 304, 24 C.M.R. at 114. This lack of accounting is not consistent with the stringent tracing required as the foundation for admission of real evidence in the military trial.[7]

■ In the absence of an evidentiary showing sufficient to "bridge the gap" during the hiatus ascribable to Sergeant Harrell, we must consider the chain of custody as incomplete[8]. We conclude therefore that neither prosecution exhibit 3 nor 4 should have been admitted into evidence by the military judge in this case. Since this means that the government cannot satisfy its burden of proof, the findings concerning Additional Charge IV cannot stand.

The decision of the United States Army Court of Military Review as to Additional Charge IV and its specification is reversed and the findings of guilty of that Charge and specification are set aside. The same are ordered dismissed. The record is returned to the Court of Military Review for reassessment of the sentence.

Judge PERRY concurs.

COOK, Judge (concurring in part/dissenting in part):

I agree with the majority opinion that there was a fatal gap in the chain of custody and, therefore, concur in the disposition of the case; but in other respects, I disagree with it.

7. It is true that this Court is on record in *United States v. Burge*, 1 M.J. 408 (C.M.A. 1976) upholding the admissibility of a police blotter containing entries establishing a chain of personal custody. We are unable, however, to analogize that rationale to the instant case.

The proposition that a report showing the chain of custody of an alleged drug qualifies for the business records exception in a prosecution for possession of a substance in violation of a regulation simply flies in the face of paragraph 144*d* of the Manual for Courts-Martial, United States, 1969 (Revised edition). That evidentiary proscription excludes records made "principally with a view to prosecution." Our Brother correctly points out administrative reasons for allowing inventory of personal property of persons taken into custody. He goes on to reason, for example, that, as we have indicated, corrected morning reports serve valid administrative purposes; they do not therefore, as a matter of law, constitute records made with a view toward prosecution. The same result, he argues, should follow for chain of custody records. However, we are unwilling to so dissipate the plain meaning of the "view to prosecution" proscription in paragraph 144*d* as applied to the facts of this case.

8. Unlike our willingness to presume regularity of systematic handling on the part of neutral chemical analysts, we cannot formulate any presumption regarding the performance of the prosecutorial custodians of real evidence in the absence of the proper demonstration. *United States v. Jones*, 404 F.Supp. 529, 542 (D.C.E.D. Pa.1975); *United States v. Bass*, 8 U.S.C.M.A. 299, 24 C.M.R. 109 (1957).

Although unnecessary to disposition of the case, the majority hold that a chain of custody receipt for property taken from an apprehended accused is inadmissible in evidence. That ruling is predicated on paragraph 144*d* of the Manual for Courts-Martial, United States, 1969 (Revised edition). I read the provision to support admissibility of the document.

Paragraph 144*d* is captioned: *"Limitations as to the admissibility of official records and business entries."* Three limitations are discussed. These are entries expressing opinion as distinguished from recording a " 'fact or event' "; a requirement that the maker of an entry in an official record "must . . . have had an official duty to know or ascertain the truth of that fact or event" recorded or, if a business entry, that it "was made in a regular course of conduct"; and, lastly, that the record was not "made principally with a view to prosecution." In my opinion, none of these limitations apply to the document in issue.

A chain of custody receipt is solely concerned with the fact of transfer of an article of evidence from one person to another; there is no assertion of opinion in it. An Army regulation (AR 195–5, para. 2–3, 14 July 1976)[1] requires the maker of an entry in the receipt to ascertain the accuracy of the fact before making the entry. The inapplicability of the first two limitations of paragraph 144*d* is manifest. However, the majority view the chain of custody receipt as prepared principally for prosecution. I view it differently for two reasons.

First, this Court has upheld the admissibility of a police blotter that included entries establishing a chain of custody for the person of an apprehended accused. *United States v. Burge*, 1 M.J. 408, 411–412 (C.M.A. 1976). I perceive no difference between

accounting for the physical person of an accused and establishing a record of police control over personal effects taken from him on his apprehension.

Apart from precedent, I perceive sound administrative reasons, wholly unassociated with prosecution, for requiring, as the regulations do, a police record of the custody of property taken from an accused incident to his apprehension and incarceration. The United States Supreme Court has upheld an inventory of personal property of a person taken into police custody. *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). The Court identified "three distinct needs" for the procedure: protection of the owner's property while in police custody; protection of the police against claims or disputes over lost or stolen property; and protection against potential danger. Each of those reasons is equally applicable to property taken from a person in police custody that is required to be listed on the custody forms in issue. In *United States v. Wilson*, 4 U.S.C.M.A. 3, 5, 15 C.M.R. 3, 5 (1954), this Court held that correction of a morning report to show an unauthorized absence and escape from the stockade 19 months after the actual events was nonetheless admissible because the morning reports "serve numerous purposes in the military services," and it could not, therefore, be said, as a matter of law, that "no official duty prompted the preparation of the [corrected] entries . . . ." In *United States v. Takafuji*, 8 U.S.C.M.A. 623, 25 C.M.R. 127 (1958), we elaborated on *Wilson* by indicating that, as an official record serving valid administrative purposes, a corrected morning report did not, as a matter of law, constitute a record made principally for prosecution. As I have indicated, the property chain of custody receipt here also serves important administrative purposes.[2] I cannot, therefore, regard it as being made

---

1. A similar requirement was imposed by the regulation in effect at the time of the commission of the offense (AR 195–5, para. 2–2, 20 September 1974).

2. It should be noted that while the record entries can establish police control over the property and its freedom from alteration or change, they may not be admissible as a report of the circumstances of acquisition of property from the accused. *See United States v. Frattini*, 501 F.2d 1234 (2d Cir. 1974).

"principally with a view to prosecution" simply because it is maintained by police officers as part of their prescribed administrative procedures.[3]

**3.** In approaching the issue, I have assumed that paragraph 144d, Manual for Courts-Martial, United States, 1969 (Revised edition), is prescriptive, not merely discussional; consequently, I have not considered the possible impact of Rule 803(6), (8) of the Federal Rules of Evidence.