**UNITED STATES**

v.

**John V. GARDI, 074 48 5907, Private First Class (E–2), U. S. Marine Corps.**

**NCM 78 0270.**

U. S. Navy Court of Military Review.

Sentence Adjudged 10 Nov. 1977.

Decided 11 Dec. 1978.

CAPT Joseph F. Smith, USMCR, Appellate Defense Counsel.

CAPT Craig L. Kemmerer, USMCR, Appellate Government Counsel.

Before BAUM, Senior Judge, and ROOT and GRANGER, JJ.

ROOT, Judge:

Appellant was convicted by general court-martial of the wrongful possession, transfer and sale of 25 grams of marijuana on 1 August 1977, 125.7 grams of marijuana on 4 August 1977, and 270.20 grams of marijuana on 5 August 1977, in violation of Article 1151, U. S. Navy Regulations, and Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892. His sentence, as approved on review below, extends to confinement at hard labor for 9 months, forfeiture of all pay and allowances, reduction to pay grade E–1, and a bad-conduct discharge.

The quantities of marijuana which constitute the subject matter of appellant's offenses were surrendered in their containers on each occasion to an NIS agent, who properly marked the containers, prepared and attached custody cards, and who placed the marijuana and containers in a temporary evidence locker at NIS headquarters. In each case, the marijuana remained in the temporary evidence locker, a standard metal wall locker, for a period of time before being transferred to the permanent evidence locker.

On appeal, appellant alleges that the Government failed at trial to show affirma-tively the integrity of the temporary evidence locker as a crucial link in the chain of custody for the marijuana and containers admitted in evidence. He therefore requests that the findings and sentence be set aside.

We do not agree.

▆ Fungible evidence generally becomes admissible and material through a showing of continuous custody which preserves the evidence in an unaltered state. *United States v. Nault*, 4 M.J. 318, 319 (C.M.A. 1978). As marijuana is a fungible substance without distinctive characteristics making one quantity identifiable from another, it is necessary to show continuous custody which maintains the item without alteration. *United States v. Watkins*, 5 M.J. 612 (A.C.M.R. 1978).

▆ The Government cannot rely solely upon the presumption that a law enforcement officer has properly maintained custody of real evidence. *United States v. Nault*, 4 M.J. at 320 n. 8. In order for the Government to satisfy its burden, however, it need not exclude all possibilities of tampering. Rather, it must satisfy the trial judge that in reasonable probability the article has not been changed in any important respect. *United States v. Martinez*, 43 C.M.R. 434, 437 (A.C.M.R. 1970); *United States v. Cloyd*, No. 74 2405 (N.C.M.R. 10 December 1974); *United States v. Jenkins*, 5 M.J. 905, 907 (A.C.M.R. 1978).

▆ In the present case, the Government relied on a combination of a chain of custody and, because the items were tagged with identifying markings upon surrender to the agent, by the direct identification of these marked items by the agent testifying at trial. We find this latter method of proof sufficient positive identification of the marked containers. We also find it of persuasive value in tending to show an absence of tampering with the containers and their contents. *See generally* Imwinkelreid, *The Identification of Original, Real Evidence*, 61 Mil.L.R. 145 (Summer 1973).

With regard to establishing the chain of custody, the Government was tasked with

showing not only the receipt and disposition of each item, but the safeguarding of each in the interim. *Id.* It is this link which appellant alleges is insufficient.

Both the appellant and the Government devote considerable attention to disputing whether or not the temporary evidence locker was locked. Appellant correctly observes that the agent "never did say he locked the locker." We resolve this issue in favor of the appellant and will consider for purposes of this review that the temporary evidence locker was not secured during the periods at issue.

The record reflects that the unsecured locker was located in the interview-interrogation room of NIS headquarters, which was itself unlocked. (R. 89.) Persons having a key to the NIS spaces for access outside of working hours included 9 NIS agents and one secretary. During normal working hours the NIS spaces were unlocked, although persons entering would normally be escorted by on-duty NIS personnel. After duty hours the spaces were protected by barred windows and two double-locked doors.

The first quantity of marijuana, consisting of 25 grams, was placed into the temporary evidence locker at approximately 1600 on 1 August 1977 and removed to the permanent locker approximately one hour later. (R. 51–53, 78.) The record suggests that the NIS agent who placed the marijuana into the temporary repository was present in the NIS office during this period. (R. 78.) Under these circumstances, we find the security taken reasonable, the probability of any tampering highly unlikely, and the evidentiary chain unbroken.

The second quantity of marijuana, 125.7 grams, entered the temporary evidence locker after 1900 on 4 August 1977 (R. 57–59) and was properly removed at 0745 on 5 August 1977 (R. 82). This substance was contained in five small plastic bags located within a larger self-sealing plastic bag, to which was attached an evidence custody tag. (R. 80–81). There was no suggestion upon extraction that the substance or its containers had in any way

been tampered with. The third quantity, 270.20 grams, was placed in the locker at 1825 on 5 August 1977 and was removed at 0745 on 8 August 1977. (R. 82–84). This quantity was contained in 11 small plastic bags, within a larger clear plastic bag, which itself was within a cloth bag, marked and initialled by the NIS agent who entered the item into the locker, and tagged with an evidence custody document describing the contents. (R. 73, 83). Again, there is nothing in the record to suggest any unauthorized intrusion into the containers.

It has been found generally that if no evidence is presented concerning the whereabouts or security of an item for a significant period of time, there must be a showing of sufficient unbroken seals and identification to establish an absence of tampering with that item. *See, e. g., United States v. Nault, supra; United States v. Bass,* 8 U.S.C.M.A. 299, 24 C.M.R. 109 (1957). Similarly, the Army Court of Military Review has held that a bag containing marijuana, although marked with tape bearing the investigator's initials, was not a sufficient demonstration of the absence of tampering where no evidence was adduced reflecting the protection and control of the substance in custody. *United States v. Watkins, supra.*

In the trial of the case *sub judice,* the Government showed both the identification of the quantities of marijuana through their marked containers, and the protection and control afforded these items while in the temporary evidence locker at NIS headquarters. While we do not find either procedure alone sufficient to assure the absence of tampering with these items while in the temporary evidence locker, we find their cumulative evidentiary value sufficient to persuade this Court that the remaining quantities of marijuana in reasonable probability had not been altered in any important respect.

Accordingly, we find that the Government adequately demonstrated a chain of custody for the marijuana and containers admitted in evidence, and that such evidence was lawfully before the trier of fact.

The findings and sentence in this case, as approved on review below, are affirmed.

Senior Judge BAUM and Judge GRANGER concur.