UNITED STATES, Appellant and
Cross-Appellee,

v.

Charles W. FOWLER, Private, U. S.
Army, Appellee and
Cross-Appellant.

No. 35,263 CM 435558.

U. S. Court of Military Appeals.

July 21, 1980.

For Appellant and Cross-Appellee: *Captain Paul K. Cascio* (argued); *Colonel Thomas H. Davis, Lieutenant Colonel R.R. Boller, Captain Richard A. Kirby, Captain Robert D. Newberry* (on brief); *Major Ted B. Borek, Captain Stephen D. Smith.*

For Appellee and Cross-Appellant: *Captain Joseph A. Russelburg* (argued); *Colonel Robert B. Clarke, Major Benjamin A. Sims, Captain John M. Zoscak, Jr., Captain Larry D. Anderson* (on brief); *Colonel Edward S. Adamkewicz, Jr., Lieutenant Colonel John F. Lymburner, Major Lawrence D. Galehouse.*

*Opinion of the Court*
EVERETT, Chief Judge:

Contrary to his pleas, Fowler was convicted by general court-martial in Germany of possessing 495 grams of marihuana, in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892. Thereupon, he was sentenced to a bad-conduct discharge, confinement at hard labor for 6 months, and forfeiture of $249.00 pay per month for 6 months. The convening authority approved, but the United States Army Court of Military Review set aside the findings and the sentence and authorized a rehearing by reason of the military judge's failure to instruct on the limited use to which the court members could put evidence of uncharged misconduct. *See United States v. Grunden*, 2 M.J. 116 (C.M.A. 1977).

However, the Judge Advocate General certified to this Court three issues for answer, which questioned the correctness of the decision below. 4 M.J. 143 (C.M.A. 1977). *See* Article 67(b)(2), UCMJ, 10 U.S.C. § 867(b)(2). Fowler then cross-petitioned, and this Court granted review of an issue he raised about the chain of custody of the physical evidence admitted at trial. 5 M.J. 77 (C.M.A.1978).

We answer in the negative the first certified question, which concerns the need for the limiting instruction under the circumstances of this case.[1] Thus, by their terms the remaining certified questions require no answer. Also, we reject Fowler's claim that a defect existed in the chain of custody.

I. *Instruction on Uncharged Misconduct*

█ Late one night Fowler had been drinking with a girl in a local bar. When she left, Fowler approached Lang, an employee at the bar, complained that the girl had departed with his money, and demanded its return. Indeed, according to the government's evidence, Fowler warned Lang, by Fowler's pulling his index finger sideways across his neck, that unless the money were returned, he would slit Lang's throat.[2]

Offended by Fowler's actions, Lang called the German police to report the incident and he further informed them that he believed Fowler to be in possession of illegal drugs. Two German policemen arrived, "provisionally apprehended" Fowler, and took from him a brown camera bag that he was carrying. The contents of this bag are involved in the chain of custody issue to be discussed hereafter.

The military judge considered that the evidence about appellant's threat to Lang involved uncharged misconduct and, so, would require an instruction limiting the court-martial members in the use to which they could put this evidence. *See United States v. Grunden, supra*. However, at the specific request of the defense counsel, he agreed not to give such an instruction.

Subsequent to *Grunden*, we ruled that no instruction on uncharged misconduct was required where that evidence bore "immediate relation to the determination of guilt." *United States v. James*, 5 M.J. 382, 383 (C.M.A.1978). In doing so, we stated that "the rule should not necessarily apply where the uncharged conduct is part of the chain of events that leads to the consummation of the crime charged." *Id.*

Similarly, in *United States v. Tobin*, 17 U.S.C.M.A. 625, 38 C.M.R. 423 (1968), the uncharged misconduct "was obviously part and parcel of" the two charges on which the accused was being tried. We ruled that "it is clear no limiting instruction was required." *Id.* at 631, 38 C.M.R. at 429.

These precedents make clear that no instruction on uncharged misconduct was required in the case at hand with respect to Fowler's threat against Lang. Thus, we need not reexamine here the correctness of *Grunden's* ruling that, despite defense counsel's request to the contrary, an instruction must be given on uncharged misconduct.[3]

---

1. "Was the Army Court of Military Review correct in holding that *United States v. Grunden*, [54 C.M.R. 1053,] 2 M.J. 116 (C.M.A.1977), mandated that a limiting instruction concerning uncharged misconduct, which involved misconduct of a different nature than the charged misconduct, could not be affirmatively waived?" 4 M.J. 143 (C.M.A.1977).

2. Fowler's version was somewhat different: he testified that he had told Lang that if the money were not returned, he would throw a chair through the window.

3. "In an adversary system of criminal justice, there is no right more essential than the right to the assistance of counsel." *Lakeside v. Oregon*, 435 U.S. 333, 341, 98 S.Ct. 1091, 1096, 55 L.Ed.2d 319 (1978). In view of the special responsibility of a defense counsel to safeguard the accused's interests, it seems anomalous to hold that a military judge has erred in acceding to a defense counsel's request that a certain collateral instruction not be given—especially where it is apparent that there is a rational basis for this request in trial tactics. *Cf. United States v. Crigler*, 10 U.S.C.M.A. 263, 27 C.M.R. 337 (1959), holding that an accused cannot complain of instructional wording which his counsel proposed. Rule 105 of the Military Rules of Evidence, which take effect on September 1, 1980, goes even further by

## II. Chain of Custody

After Schulz, one of the German policemen, had seized Fowler's brown camera bag, he turned it over to his partner Knapp. Shortly thereafter they opened the camera bag and discovered two plastic bags, one full and the other partly full of a tea-like vegetable matter, as well as some empty plastic bags.

Returning to a German police station with Fowler and the camera bag, the two police officers completed a police report on the incident. Pursuant to a telephone call from the station, military police investigator Ross arrived and proceeded to field test a quantity of the substance from the camera bag. Ross had been trained in the test which he used; he had employed it on some 60 to 70 prior occasions and in each instance his results had been confirmed by a subsequent laboratory examination. At about 3:00 a. m. Ross concluded that the substance in the plastic bags was marihuana. According to Schulz and Knapp, both of whom testified at the trial, the camera bag and its contents did not leave their sight while it remained at the police station.

Later that same morning, Herr Bierensan, another German policeman, arrived at his office in a different police station. On his desk he found a brown camera bag containing plastic bags of a vegetable matter. He field-tested the substance and, at about 7:30 a. m., concluded that it was marihuana. Later the substance was placed in American hands and transmitted to a laboratory for testing, which confirmed that the substance was marihuana.

When the Government sought to introduce as Prosecution Exhibit 1, the brown camera bag and its contents which Bierensan had found on his desk, the defense objected. There was no complaint about the chain of custody as it extended from Bierensan's desk to the laboratory; and it was stipulated that marihuana was in Prosecution Exhibit 1. However, defense counsel complained that no chain of custody

connected Prosecution Exhibit 1 from the desk in Bierensan's office at one German police station back to the other police station where a brown camera bag had been inspected by Schulz, Knapp, and Ross.

To explain the missing link, the Government elicited from Bierensan testimony that under normal police procedure a police detail would have brought the evidence to his office from the precinct station where it was originally located. However, there was no identification of any policeman who had been detailed to transport Prosecution Exhibit 1.

To help establish that the substance which Ross had tested was the same as that which Bierensan tested 4 hours later, the prosecution adduced testimony from Ross, Schulz, Knapp, and Bierensan that Prosecution Exhibit 1 was indeed the item which each one had handled that morning. Moreover, Ross testified that the substance which his field test revealed to be marihuana had been "manicured"—that is, the stems had been removed. Since stem removal adversely affected the value of marihuana, Ross stated that finding "manicured" marihuana was unusual. Examining Prosecution Exhibit 1, he concluded that it was the same as when he had examined it at the German police station.

In this Court, Fowler contends that Prosecution Exhibit 1 was improperly admitted in evidence in view of the break in the chain of custody between Ross and Bierensan and in view of the absence of a showing that the substance in the brown camera bag had been adequately safeguarded from tampering during the unaccounted for 4-hour period. Fowler relies heavily on our opinion in *United States v. Nault*, 4 M.J. 318 (C.M.A.1978).

At first blush, *Nault* appears to support Fowler's position. Placing great emphasis there on the fungible nature of an LSD pill, the Court noted that, as a general matter, "fungible evidence becomes admissible and

removing the sua sponte responsibility of the military judge to instruct on uncharged miscon-

duct, except when failing to instruct would constitute plain error under Rule 103(d).

material through a showing of continuous custody which preserves the evidence in an unaltered state." *Id.* at 319.

Nonetheless, the Court was careful to recognize that there are factual exceptions to this general proposition. For instance, in *United States v. Bass*, 8 U.S.C.M.A. 299, 24 C.M.R. 109 (1957), the predecessor handler before the break in the chain had testified about paraffin seals and adhesive tape and about having etched his initials on the samples, while the successor handler had testified that the seals were intact upon his receipt of the evidence. As the Court observed in *Nault*: "This, coupled with the absence of suggestions of tampering, '. . . successfully bridged the gap created by the failure of May to testify.' *Id.* at 305, 24 C.M.R. at 115." *United States v. Nault, supra* at 320. However, in *Nault* the Court found that the facts did not match the *Bass* standard:

> Unlike *Bass* the record is devoid of any indication of distinctive seals or unusual identifying marks associated with the item. Moreover, there is nothing in the record of trial to show that this proffered evidence was kept intact and was untampered with during the period of time it was in Sergeant Harrell's possession.

*United States v. Nault, supra.*

■ Careful analysis of the facts of this case, as compared to those of *Nault*, reveals several factors which convince us that the substance produced in court as Prosecution Exhibit 1—concededly the substance which Bierensan tested in his office—was the same substance which Ross had field tested at the first police station. First, in *Nault* the LSD pill was completely fungible and had no distinctive characteristic; in fact, only a crumbled portion of it was produced in court. Here, while marihuana normally is a fungible substance, this particular exhibit was readily identifiable; it was in two plastic bags inside a brown camera bag and the marihuana was "manicured", which according to Ross was unusual. Second, the Government in *Nault* was completely unable to offer any assurances that the pill produced in court was the same pill seized

from the accused. Here, both Ross and Bierensan—on either end of the missing link—identified Prosecution Exhibit 1 as the evidence they handled. Third, the break in the chain in *Nault* was 4 days, during which the Government was completely unable to explain what, if anything, had happened to the evidence. Here the break was 4 hours and the testimony as to the regular police procedure for transporting the evidence to Bierensan helped explain the whereabouts of the evidence during the interval. Furthermore, the circumstance that field tests made at both ends of the interval showed marihuana to be present further assures that the same item was involved in each test.

We in no way intend to diminish the concern we displayed in *Nault* as to the chain of custody for fungible evidence; the trial court must be assured that such evidence has been properly handled and accounted for and has not been tampered with in any way. Normally, as was observed in *Nault*, this is done by the testimony of each person who handled the evidence in that chain; but, as *Bass* indicates, special facts may otherwise convince the trial court that the evidence proffered in court is in reliable condition.

In the case at hand, the military judge determined that the chain of custody was adequately established and admitted Prosecution Exhibit 1. His determination was supported by credible evidence. Therefore, we find no error.

The decision of the United States Army Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Army for reference to the Court of Military Review for further proceedings under Article 66, UCMJ, 10 U.S.C. § 866.

Judge Fletcher concurs.

COOK, Judge (concurring in part and dissenting in part):

I am unable to accept the reading the majority give *United States v. James*, 5 M.J. 382 (C.M.A.1978), and *United States v. To-*

*bin,* 17 U.S.C.M.A. 625, 38 C.M.R. 423 (1968). Each of these cases involved uncharged misconduct that was directly and immediately entwined with evidence of the offense charged. In *United States v. James, supra* at 383, the Court "characterize[d]" the evidence of uncharged misconduct "as facts immediately related to the determination of guilt as to the charge successfully prosecuted." In *United States v. Tobin, supra* at 631, 38 C.M.R. at 429, the uncharged misconduct was the unlawful entry into a hotel room. The Court concluded it was "unable to separate each entry from" the offenses charged; it noted that the entry "was obviously part and parcel of both" of the charged offenses.

The principal opinion does not identify any connection between accused's possession of marihuana, the offense charged, and the alleged threat to injure Lang. Yet, it concludes that "no instruction on uncharged misconduct was required." I disagree. My reading of the record convinces me that, as regards the merits, there is no connection whatever between the threat and the possession offense for which the accused was on trial. The trial judge concluded, correctly in my opinion, that as a result of the court members' awareness of the uncharged misconduct, an appropriate instruction was necessary. Defense counsel, however, "specifically request[ed] that it not be given." In that situation, the accused cannot now urge the absence of an instruction as reversible error. *See* my dissent in *United States v. Grunden,* 2 M.J. 116, 124 (C.M.A. 1977).

As to the accused's contention regarding the alleged break in the chain of custody, I agree with the majority that adequate evidence supports the trial judge's ruling admitting the marihuana into evidence. For the reasons indicated, I concur with them in reversing the decision of the Court of Military Review.