UNITED STATES, Appellee,

v.

**Gaines M. PORTER, Private First Class U. S. Army, Appellant.**

No. 38720.
SPCM 13926.

U. S. Court of Military Appeals.

Dec. 14, 1981.

For Appellant: *Colonel Edward S. Adamkewicz, Jr., Lieutenant Colonel John F. Lymburner, Major Charles A. Byler, Captain Julius Rothlein* (on brief); *Captain Edward J. Walinsky.*

For Appellee: *Colonel R. R. Boller, Major Ted B. Borek, Captain Charles A. Cosgrove, Captain Brian X. Bush* (on brief).

Opinion of the Court

EVERETT, Chief Judge:

On January 15 and 24, 1979, appellant was tried at Fort Riley, Kansas, before a special court-martial composed of officer members. Contrary to his pleas, the court found that he had sold 49 grams of marihuana and possessed 114 grams on the evening of October 16, 1978, in violation of Article 134 of the Uniform Code of Military Justice, 10 U.S.C. § 934. He was sentenced to a bad-conduct discharge, confinement at hard labor for 6 months, forfeiture of $275 pay per month for 6 months, and reduction to the lowest enlisted grade. After his conviction had been upheld by all intermediate reviewing authorities, we granted review (9 M.J. 122) of these two issues:

## A

THE MILITARY JUDGE ERRED BY ADMITTING, OVER DEFENSE OBJECTION, A LABORATORY REPORT THAT HAD NOT BEEN SHOWN TO BE PRODUCED WITHIN THE REGULAR COURSE OF BUSINESS OF THE EVALUATING LABORATORY.

## B

PROSECUTION EXHIBITS 2 AND 4 (THE ALLEGED MARIHUANA) WERE INADMISSIBLE BECAUSE THE GOVERNMENT FAILED TO ESTABLISH A COMPLETE CHAIN OF CUSTODY OVER THIS FUNGIBLE SUBSTANCE.

## A

As to the issue listed first, we disagree with appellant's claim that the laboratory report (prosecution exhibit 8), which reported the analysis of the substance as marihuana, was inadmissible as a business record entry simply because "[n]o government witness testified or even hinted at what was the normal business of the laboratory" or "that the laboratory report . . . was made in the regular course of that

business."[1] *United States v. Vietor*, 10 M.J. 69 (C.M.A.1980), is clearly dispositive against appellant. Also in *Vietor*, "no one from the laboratory testified during the trial, although trial defense counsel objected to the report on the ground it was not properly authenticated." *Id.* at 70. However, since the evidence showed that the suspected contraband had been sent by registered mail to the criminal investigation laboratory for chemical analysis, judicial notice could be taken of the fact

> that a "crime laboratory" is a place in which scientific methods and principles are applied in the testing and analysis of various items in connection with the detection and prosecution of crimes. *Cf.* Webster's Third New International Dictionary, 1963 Unabridged Edition, page 1260. Obviously, the regular course of the laboratory's business is to record the results of its analysis and make its report to those concerned. From the file number and tenor of the report involved here, we are satisfied that it was made in the regular course of the laboratory's business. We conclude therefore that the exhibit falls within the business entry exception to the hearsay rule.

*Id.* at 70–71. Since the record here shows that the suspected marihuana had been sent by registered mail to the United States Army Criminal Investigation Laboratory for chemical analysis, "the normal business of the laboratory" could be judicially noted. Therefore, testimony from a person who worked at the crime laboratory was not essential for the admission of a laboratory report under the business record entry exception. *See* para. 144c, Manual for Courts-Martial, United States, 1969 (Revised Edition).

■ Nonetheless, absent a defense waiver, a laboratory report must be properly authenticated before it can be admitted as evidence. Para. 143b, Manual, *supra*; *United States v. Strangstalien*, 7 M.J. 225, 228 (C.M.A.1979). Here appellant further contends[2] that

[t]he accompanying certificates purporting to be authentication by the Records Manager at the United States Army Criminal Investigation Laboratory—*CONUS* is also insufficient to qualify the laboratory reports as valid business entries because, unlike the situation in *Strangstalien*, the defense counsel made a timely objection to all of the evidence as hearsay.

■ Of course, even if we assume arguendo that this statement is true, the testimony of Special Agent Jones established that the report had been properly "authenticated as a business entry" as required by paragraph 144c, Manual, *supra*. Jones explained that, as the evidence custodian at the local CID office, he received laboratory requests from agents who had turned in evidence to him. Thus, he was quite familiar with the procedure for submitting evidence to the United States Army Criminal Investigation Division Laboratory, at Fort Gordon, Georgia. As to the lab report offered in evidence, he recounted that he had sent the evidence by registered mail to the laboratory for examination by a chemist to determine exactly what the substance was and that the laboratory had mailed back the report by registered mail. Upon opening the package, Jones "verified what was returned to [him] actually matched what was supposed to have been returned." For example, the case number on the laboratory reports matched those on the property evidence receipts, and the "registered mail number in the report" corresponded with the registered mail number on Jones' letter. Moreover, according to Jones, "there is a description of the items that were submitted by them and examined and it matches the description of the items on the DA Form 4137." Thus, the witness sufficiently demonstrated that the laboratory report was genuine and "came through a reliable source from a" laboratory which prepared such reports in the regular course of its business, *cf.* para. 144c, Manual, *supra*; so we conclude that it was properly

---

1. Final Brief of the Appellant, p. 11.

2. *Id.*

admitted into evidence under the business record entry exception.

## B

■ As to the issue listed second, appellant claims that "a complete chain of custody" was not established as to any of the marihuana that he allegedly possessed or sold to a military police investigator. Moreover, he contends that persons from the United States Army Criminal Investigation Laboratory should have been called by the Government to testify about their handling of the evidence and that their testimony was especially indispensable since, although the suspected marihuana had been mailed to the laboratory in a plastic bag in which it was originally contained, it was all lumped together when returned from the laboratory.[3] Therefore, appellant argues that, since the marihuana had become fungible, none of the prior handlers of the evidence "could testify [without these witnesses' testimony] that this *lump* of alleged marihuana was the same substance which they seized on 16 October 1978" from him.[4]

Again we must disagree with appellant's claim. First, this Court has never required personnel from the criminal investigation laboratory to testify in order to establish a sufficient chain of custody over the evidence. On the contrary, we explicitly and repeatedly have observed that, so far as the laboratory is concerned,

> we presume the regularity of procedure in the handling and storage of the specimens to insure absolute identity between the items received, then analyzed, and this subsequent representation in the written report. This is, furthermore, in accord with the well-established rule of law that without a contrary showing, the presumption of regularity supports the official acts of public officials.... [W]e presume regularity in the chemical labo-

ratory business handling of the specimen absent contrary showing.

*United States v. Strangstalien, supra* at 229 (footnote omitted). *Accord, United States v. Nault,* 4 M.J. 318, 320 n.8 (C.M.A.1978). *See United States v. Lane,* 591 F.2d 961, 962 (D.C.Cir.1979); *Gallego v. United States,* 276 F.2d 914, 917 n.2 (9th Cir. 1960).

Of course, if appellant had affirmatively requested that the analyst who prepared the laboratory report be called as a witness in order " 'to examine him as to his competency and as to the regularity of the procedure employed,' " this would have been altogether a different matter. *United States v. Vietor,* 10 M.J. 69, 76 (C.M.A.1980) (Everett, C. J., concurring in the result); *United States v. Strangstalien, supra; United States v. Miller,* 23 U.S.C.M.A. 247, 250, 49 C.M.R. 380, 383 (1974); *United States v. Evans,* 21 U.S.C.M.A. 579, 582, 45 C.M.R. 353, 356 (1972). However, in the case at hand, the defense counsel did not request the presence of the analyst although the military judge specifically reminded him that "you are free to question the qualifications of the examiner and given that right you are free to call the examiner as a witness if you so desire." Instead, defense counsel retorted that "[t]he defense does not have the burden of showing that [the analyst] is not [an expert], the defense can remain silent and do nothing." In light of counsel's reply, we agree with the military judge that the defense counsel was "not requesting the person as a witness." *Cf. United States v. Vietor, supra.*

## C

■ Finally, we perceive no problem with the handlers' in-court identification of the marihuana as being the same marihuana that appellant possessed or sold. While in one sense the marihuana was "fungible"[5]

---

**3.** One of the military police investigators testified that "they were taken out of these bags to lift the fingerprints off the bags and the marihuana was placed in this bag by the lab."

**4.** Final Brief of Appellant, p. 7.

**5.** As noted in *United States v. Parker,* 10 M.J. 415, 416 (C.M.A.1981), "the evidence is fungible ... when it does not possess characteristics which are fairly unique 'and readily identifiable.' *United States v. Nault,* 4 M.J. 318, 319 (C.M.A.1978)."

when it came back from the crime laboratory, nevertheless the witnesses identified the marihuana by showing a continuous chain of custody over the substance. *See United States v. Parker*, 10 M.J. 415, 416–17 (C.M.A.1981); *United States v. Nault, supra.* Almost in textbook fashion every handler of the suspected marihuana accounted for his handling of the evidence from the time it was bought or seized from the appellant up to the time it was sent to the laboratory by the evidence custodian.[6] The various handlers further testified that the substance had been secured. Indeed, the evidence custodian testified that he had secured the evidence in his "drug safe within the evidence room" until court on the morning of the trial; the evidence was out of his safe only when he sent it by registered mail to the crime laboratory. Even then, according to the evidence custodian, he knew that the returned marihuana was the same marihuana that he had sent to the laboratory because "there is a description of the items that were submitted by them and examined and it matches the description of the items on the DA Form 4137." In addition, the original bags from which the marihuana had been taken and the other paraphernalia that had been sent to the crime laboratory along with the suspected marihuana also came back with the lump of marihuana. These bags had been conspicuously marked with initials, time, and date following seizure of the plastic packets. *See, e. g., United States v. Lewis*, 11 M.J. 188 (C.M.A. 1981). Furthermore, witnesses testified that the "lumped" marihuana appeared to have been the same substance and "about the same amount." Under these circumstances, the marihuana had properly been identified as the same marihuana obtained originally from appellant.

■ We have found no evidence that the marihuana had been tampered with or changed in important respects. *See United States v. Lewis, supra* at 193. The evidence custodian agreed that the specimens "were virtually in the same condition" when he received them back from the laboratory.

Moreover, no evidence to the contrary appears in the record. Therefore, the trial judge could reasonably have concluded that the evidence had not been tampered with.

**D**

■ Defense counsel properly objected to admission of two chain-of-custody receipts and expressly relied on footnote 7 of this Court's opinion in *United States v. Nault*, 4 M.J. 318 (C.M.A.1978). The objection was well founded, and, over defense objection, the statements in the documents could not be used to establish the truth of the matters stated therein. However, as in *United States v. Madela*, 12 M.J. 118 (C.M.A. 1981), the chain-of-custody receipts prepared on DA Form 4137 contained references to the same markings on the evidence which identified the physical evidence offered at trial; in turn, the CID case number on the receipt corresponded to the contributor case number on the lab report. Thus the physical evidence identified by government witnesses was linked to the laboratory analysis of that evidence.

■ We note also that, as in *United States v. Jessen*, 12 M.J. 122 (C.M.A. 1981), appellant did not deny that the substance seized from him was marihuana. Instead, as to the sale charge, he contested his knowing participation in the sale; as to the charge of possession, he testified that the marihuana found in his room really belonged to his roommate. Under these circumstances, any error committed in the admission of the chain-of-custody receipts was not prejudicial to appellant. *Cf. United States v. White*, 9 M.J. 168 (C.M.A.1980).

**E**

Accordingly, we affirm the decision of the United States Army Court of Military Review.

COOK, Judge (concurring):

Except for the statement in Part D declaring the chain-of-custody receipts to be

---

6. *See* Final Brief of Appellant, pp. 2–3.

inadmissible, I agree with the principal opinion and join in affirming the decision of the Court of Military Review. *See* my separate opinion in *United States v. Nault,* 4 M.J. 318, 320 (C.M.A.1978); Mil.R.Evid. 803(6) and (8).

FLETCHER, Judge (concurring):

As a starting point to resolving the issues raised in this appeal, I note my disagreement as to the majority's conclusion that any errors involved in the admission of the chain-of-custody documents in this case were not prejudicial to appellant. The mere failure of an accused to deny the chemical nature of the substance was marihuana does not relieve the Government of its burden of proof. *See United States v. Jessen,* 12 M.J. 122 (C.M.A.1981) (Fletcher, J., dissenting). Moreover, my opinion in *United States v. White,* 9 M.J. 168 (C.M.A. 1980), provides no support for the finding of no prejudice by the majority on this basis. In that case, testimony from the accused and other witnesses at trial appeared in the record to corroborate the introduced extrajudicial statement of the accused admitting the chemical nature of the substance. Here, appellant simply admitted that he distributed to Hayes a bag belonging to his bunkmate without being fully aware of the nature of the bag's contents.

Turning to the remainder of the principal opinion, I feel constrained for purposes of clarity to approach this case in a somewhat different fashion. First, I will address questions concerning the admissibility of prosecution exhibits 2 and 4, the alleged marihuana purportedly received and seized from appellant. Second, I will address the challenges raised to the admission of prosecution exhibit 8, a laboratory report purporting to establish the chemical nature of the substances contained in the above-mentioned exhibits. These issues are resolved, accepting as the majority does that prosecution exhibits 3 and 5 were incompetent hearsay and inadmissible to show the custody of alleged drugs by persons who did not testify in person at trial.

The first issue of importance in this case concerns the admissibility of prosecution exhibit 2, a plastic bag containing three smaller marked plastic bags and a second separate plastic bag containing a quantity of green vegetable matter and prosecution exhibit 4, a plastic bag containing nine smaller marked plastic bags and a separate plastic bag containing a quantity of green vegetable matter. The relevance of this government evidence hinges on a showing by the Government that these materials were the ones earlier received from appellant and that they were in a substantially unaltered state. *See United States v. Parker,* 10 M.J. 415, 416–18 (C.M.A.1981); *United States v. Courts,* 9 M.J. 285, 293–99 (C.M.A.1980) (Fletcher, J., dissenting). The chain-of-custody documents (prosecution exhibits 3 and 5), contain incompetent hearsay and are inadmissible to resolve these questions. *United States v. Neutze,* 7 M.J. 30 (C.M.A. 1979).

The problem in this case is that all the government witnesses who testified as to their possession of the alleged drugs received from the appellant clearly indicated that the suspected marihuana was broken up into individual quantities and packaged in twelve plastic bags prior to its submission to the laboratory for examination. Jones, the evidence custodian, testified that when he received these materials back from the laboratory, the suspected marihuana was no longer in individual bags but was lumped together in two plastic bags and the marked plastic bags were separate.

The question before this Court is whether such a discrepancy in packaging prevents this material from being readily identifiable or provides a suggestion that the originally seized items were tampered with. *See United States v. Courts, supra.* On the question of identity of the offered evidence, Jones, the evidence custodian, testified that the marked bags were the same he sent to the laboratory and the lumped-together vegetable matter appeared to be the same substance and in the same amount as he sent to the laboratory. In addition, he testified that a laboratory report accompany-

ing these materials had the same case number as the one assigned to the materials he sent to the lab. *See* paras. 146*a* and 149*c*, Manual for Courts-Martial, United States, 1969 (Revised edition). This testimony is sufficient to establish the identity of the government evidence with that originally taken from appellant. *See United States v. Madela*, 12 M.J. 118 (C.M.A.1981) (Fletcher, J., concurring); *United States v. Parker, supra.*

A second problem concerns the question of whether the lumping together of the marihuana, rather than its maintenance in the original packages, provides a suggestion of tampering. I note at the outset that no person from the laboratory or the regulations concerning the practices of the laboratory explained on the record the reason for this discrepancy. Moreover, the military judge sustained an objection by the defense that Jones, as evidence custodian, could not explain this discrepancy without a proper foundation being laid as to his knowledge of what occurred at the laboratory.

I agree with the majority, however, that the military judge could have reasonably concluded that the materials taken from appellant were not tampered with at the laboratory. The discrepancy in this case is not as substantial as those revealed in the record in *United States v. Courts, supra* at 297–99 (Fletcher, J., dissenting). In addition, the Government amply demonstrated that the change in packaging of the seized substances occurred at the laboratory during the possession of the drugs by the chemists. *Cf. United States v. Courts, supra* at

1. The evidence custodian, Jones, testified that he sent the materials received from appellant to the crime laboratory by registered mail and also picked up the package sent by registered mail from the crime laboratory to him. He also testified that the package he received contained the same materials which he originally sent to the crime laboratory and which were intro-

298.[1] Accordingly, the presumption of regularity applies and this question must be resolved against appellant.

I turn now to the issue concerning the qualification of this laboratory report as admissible hearsay under the business entry exception. *See* paragraph 144*c*, Manual, *supra.* It is true that no person from the laboratory testified as to the nature of the business of this laboratory and its regular practice to produce such reports. *See* para. 144*c*. Nevertheless, the military judge took judicial notice of service regulations which explained the business of the laboratory and its practice to issue laboratory reports similar to prosecution exhibit 8. *See* para. 147, Manual, *supra*. These regulations are attached to the record of trial. Special Agent Jones also testified as to his practice to submit requests for laboratory examination of suspected contraband to this laboratory and to receive laboratory reports similar to prosecution exhibit 8 in return. In view of this foundation, I agree that the Government properly qualified prosecution exhibit 8 as a regular business entry within the meaning of paragraph 144*c*, Manual, *supra*. Moreover, in view of these matters, I also agree that prosecution exhibit 8 was properly authenticated as a genuine laboratory report from this crime laboratory.

Finally, the question is raised whether the laboratory report was properly linked to prosecution exhibits 2 and 4, the quantities of vegetable matter. For the reasons stated in my concurring opinion in *United States v. Madela, supra*, I also resolve this issue against appellant.

duced as government evidence in the present case. I infer from this evidence that the crime laboratory had possession of these materials during this period, in the absence of evidence to the contrary. *See* para. 138*a*(2), Manual for Courts-Martial, United States, 1969 (Revised edition).