UNITED STATES, Appellant,

v.

Lino H. ORTIZ, Specialist Four, U.S. Army, Appellee.

No. 38,815.

SPCM 14125.

U.S. Court of Military Appeals.

Dec. 14, 1981.

For Appellant: *Colonel R. R. Boller, Major Ted B. Borek, Major Douglas P. Franklin, Captain Kenneth H. Clevenger* (on brief).

For Appellee: *Colonel Edward S. Adamkewicz, Jr., Lieutenant Colonel John F. Lymburner, Major Charles A. Byler* (on brief).

Opinion of the Court

EVERETT, Chief Judge:

On January 22, March 21, and April 2 and 16, 1979, Specialist Ortiz was tried by a military judge sitting as a special court-martial at Schweinfurt, Germany. Contrary to his pleas, he was convicted of possessing heroin, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The military judge sentenced him to a bad-conduct discharge, confinement at hard labor for 3 months, forfeiture of $250 pay per month for 6 months, and reduction to the lowest enlisted grade. The convening authority approved the sentence.

On February 12, 1980, a divided United States Army Court of Military Review set aside the findings and sentence because a chain-of-custody receipt (DA Form 4137) had been admitted to link evidence seized from Ortiz with a laboratory report. 9 M.J. 523. In so ruling, the Court of Military Review concluded that the rule announced in *United States v. Porter*, 7 M.J. 32 (C.M.A.1979), applied retroactively to April 3, 1978—the date of the decision in *United States v. Nault*, 4 M.J. 318 (C.M.A.1978). After the court below denied a government motion for reconsideration, the Acting Judge Advocate General of the Army certified the case to this Court on the following issue (9 M.J. 15):

WHETHER *UNITED STATES v. PORTER*, 7 M.J. 32 (CMA 1979) AND *UNITED STATES v. NEUTZE*, 7 M.J. 30 (CMA 1979), SHOULD BE APPLIED RETROACTIVELY.

In *United States v. Jessen*, 12 M.J. 122 (C.M.A.1981), we addressed in detail this issue of retroactivity. There we concluded that footnote 7 of *Nault*, which stated that chain-of-custody receipts were inadmissible because prepared "principally with a view to prosecution," para. 144*d*, Manual for Courts-Martial, United States, 1969 (Revised edition), applied to all cases then pending on direct review. However, we also held that only an appellant whose counsel objected to the admission of the receipt or who in some other way contested its reliability could take advantage of the *Nault* footnote in cases tried prior to May 7, 1979, when *Porter* and *Neutze* were decided. The case at bar was tried prior to that date, and defense counsel declined to object to the laboratory report and did not challenge its reliability in any other way. Therefore, the chain-of-custody receipt was properly admitted by the military judge.

Nonetheless, the findings of guilty cannot stand. At trial the prosecution relied on two German policemen who had seized the alleged heroin from Ortiz. Each of the policemen identified prosecution exhibit 1—described in the record as "[o]ne (1) paper packet containing a powder like substance"—as the envelope they had taken from Ortiz. They also testified that they had turned over this envelope to "the third police precinct," but they did not name any specific person to whom this evidence had been delivered.

Prosecution exhibit 2, the chain-of-custody receipt, identifies "Karin Frederrich" as the person from whom the evidence was received. Frederrich's name was never mentioned by either police officer who testified as a witness. Moreover, the chain-of-custody receipt does not refer anywhere to either of the two German policemen who seized the envelope from Ortiz. The receipt's description of articles lists "[o]ne paper packet containing a powder like sub-

stance," but, unlike the situation in *United States v. Madela*, 12 M.J. 118 (C.M.A. 1981), there is no reference on the receipt to any markings or writings on the packet.[1]

The DA Form 4137 indicates that the evidence was obtained at 1400 hours on October 31, 1978—three days after the alleged offense. There is no reference on the form to the third police precinct—the unit to whom the two German policemen had delivered the evidence. Under "location from where obtained," the receipt states "[f]rom person of Ortiz," and this is the only entry which in any way ties the evidence analyzed by the crime laboratory to the envelope seized from Ortiz.

Under these circumstances we conclude that, although the chain-of-custody receipt was admissible because of defense counsel's failure to object, the Government failed adequately to link the envelope seized from Ortiz to the laboratory report.[2] *See United States v. Fowler*, 9 M.J. 149 (C.M.A.1980). Thus, the evidence is legally insufficient to establish a vital element of the offense. Accordingly, the charge must be dismissed. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

The decision of the United States Army Court of Military Review is reversed to the extent it permits a rehearing and the charge is dismissed.

FLETCHER, Judge (concurring in part):

I do not agree with the limited retroactivity doctrine espoused by the majority in *United States v. Jessen*, 12 M.J. 122 (C.M.A.1981), or applied in the present case. Otherwise, I agree with the decision of the Court.

COOK, Judge (concurring in part and dissenting in part):

For the reasons set out in my separate opinion in *United States v. Nault*, 4 M.J.

---

1. The German policemen testified through interpreters; it is unclear from their testimony whether, at the time of trial, prosecution exhibit 1 contained any identifying marks. In any event, as the exhibit is described in the record by the court reporter, there is no mention of any markings. Obviously, marks on the en-

velope in which the evidence was contained would have facilitated establishment of a chain of custody.

2. Even the admissions by Ortiz to Captain Dobija (R. 58–59) are too ambiguous to support the omissions in the government's case.

318, 320 (C.M.A.1978), I concur with Chief Judge Everett's determination that the record of police custody of the evidence obtained from the accused was properly before the trial judge for consideration on the question of accused's guilt. However, I disagree with his conclusion that, as a matter of law, the evidence fails "to link the envelope seized from Ortiz to the laboratory report."

While on patrol in Rothschild Park, Frankfurt, Germany, two civilian park investigators arrested the accused and took from his possession a white envelope. At trial, an envelope containing a white powder was marked prosecution exhibit 1 for identification. Both park investigators, Szawejko and Imhof, testified as government witnesses. Szawejko stated that the accused had "tried to hide a [sic] envelope of heroin under his sweater," and Imhof took it from him. Given prosecution exhibit 1 for examination and asked whether it was what had been taken from the accused, he replied, "Yes." Imhof acknowledged seizing the envelope the accused "tried to hide . . . under his sweater."

Defense counsel did not challenge Investigator Szawejko's identification of the content of the envelope as heroin. Indeed, the defense's theory virtually conceded the nature of the substance. The accused was found by the park investigators in a public restroom in the company of a fellow soldier and a German girl, whom the accused admitted was in possession of a syringe and some heroin which she had "started cooking up." On cross-examination of the investigators, defense counsel elicited admissions that "needles and syringes and stuff like that" were commonly found on the floor of the restroom. Additionally, Szawejko's testimony on cross-examination indicates his familiarity with drugs and common implements for its use. In my opinion, this evidence alone is sufficient, as a matter of law, to support a finding beyond a reasonable doubt that the substance taken from the accused was heroin. *United States v. Guz-*

*man*, 3 M.J. 1062, 1064 (A.F.C.M.R.1977); *see United States v. Jessen*, 12 M.J. 122 (C.M.A.1981). But if more is needed, it is provided by prosecution exhibit 2.

Prosecution exhibit 2 does not merely indicate that someone named Karin Frederrich turned over to the Frankfurt District CID Office a packet of powder described in prosecution exhibit 2, but Frederrich's address was given as Frankfurt German Police, Section K44. Considering the high degree of involvement with drugs of American service persons in Germany during this period, which our cases indicate, and the testimony by the investigators that they had turned over the accused, his identification card and the seized packet to the "protection police" from "the third police precinct," I entertain no doubt that it was commonly known in the area and, therefore, known to the military judge, as trier of the facts, that the section was concerned with drug cases. *See United States v. Jones*, 2 U.S.C.M.A. 80, 87, 6 C.M.R. 80, 87 (1952).

Prosecution exhibit 2 further indicates that the packet turned over to the CID had been obtained "[f]rom person of ORTIZ." The exhibit's identification of the source of the packet as Ortiz is sufficient to establish its connection with the envelope taken from the accused. As the Court of Appeals remarked in *United States v. Thurman*, 436 F.2d 280, 285 (D.C.Cir.1970), "identity of last names is evidence of actual identity." (Footnote omitted.)

Although I am satisfied that the evidence is sufficient to sustain the connection between the envelope and the chain-of-custody receipt, the Court of Military Review did not, in exercising its factfinding power, review the evidence to determine if it established guilt beyond a reasonable doubt. The accused is entitled to that review. Accordingly, I would return the record of trial to the Court of Military Review for further consideration.