UNITED STATES, Appellee,

v.

Laura GONZALES, Staff Sergeant
U.S. Air Force, Appellant.

No. 67,999.
CMR No. 28453.

U.S. Court of Military Appeals.

Argued March 4, 1993.
Decided Sept. 20, 1993.

For Appellant: *Captain Robert A. Parks* (argued); *Colonel Terry J. Woodhouse* (on brief); *Major Alice M. Kottmyer, Major Mary C. Yastishock, Captain Richard W. Aldrich.*

For Appellee: *Captain David C. Wesley* (argued); *Colonel Richard L. Purdon* and *Lieutenant Colonel Jeffery T. Infelise* (on brief); *Lieutenant Colonel Brenda J. Hollis* and *Captain David G. Nix.*

*Opinion of the Court*

WISS, Judge:

A general court-martial composed of officer members rejected appellant's not-guilty pleas and convicted her of a single specification of using cocaine, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. Thereafter, the court members sentenced her to a bad-conduct discharge and reduction to the grade of E–3. The convening authority approved these results, and the Court of Military Review affirmed in an unpublished opinion dated February 14, 1992.

On appellant's petition, we granted review to consider her claim that the military judge had erred when he overruled her chain-of-custody objection to urinalysis evidence. 36 MJ 195. Based on the military judge's findings of fact that are supported by the evidence, we hold that his ruling—that there was sufficient probability that the evidence had not been changed in any important respect—was supported by the record and was not clearly erroneous. *See United States v. Courts,* 9 MJ 285, 291 (CMA 1980).

I

The only evidence besides expert testimony supporting appellant's conviction is the report of the laboratory analysis on a urine sample submitted as hers. The relevance of the report in this trial, naturally, de-

pends on whether the urine tested was appellant's. *See id.* at 290. The thrust of the defense challenge to the evidence in question is that, due to a break in the chain of custody of appellant's urine sample prior to the time it was sealed and marked for transport to the laboratory, the prosecution has not established that the urine tested was appellant's.

This excerpt from the opinion of the Court of Military Review summarizes the evidentiary basis of the defense objection:

Staff Sergeant Hall had been detailed to observe as Sergeant Gonzales provided the [urine] specimen [during a unit-wide inspection for illegal drugs]. She remembers entering the ladies' room with only a wide mouth container, watching while appellant urinated into it, screwing the cap back on this same wide mouth container, and carrying it back to the collection station [and giving it to Sergeant Brown]. She remembers initialing the regular small mouth container (in which specimens are shipped to the laboratory) after it had been sealed. The urine was never out of her sight but she had no recollection of how the urine got from the wide mouth container to the small mouth container.

Unpub. op. at 1–2. After litigation of whether this lack of recollection constituted a fatal missing link in the chain of custody, the military judge concluded as follows in overruling the defense objection:

Staff Sergeant Hall obviously has some difficulty remembering the details of exactly what happened in the bathroom, and remembers only a wide mouth container being taken into the bathroom. That certainly will affect the weight of her testimony, but in my mind she said three critical things. First, that she observed the accused urinate, and that that urine was under her constant super—

observation. Secondly, that the urine coming from the accused's body was the urine that was ultimately placed in Prosecution Exhibit 6 [small mouth jar], and was the urine in [that jar] when Staff Sergeant Brown sealed it, and Sergeant Hall placed her initials on it. Third, that the urine was not tampered with or altered while under her observation.

The Government's burden of demonstrating an adequate chain of custody is satisfied by showing that fungible evidence has been preserved in an unaltered state. The Court must be satisfied by the Government's proffer that in reasonable probability the relevant evidence, the urine sample in this instance, was not changed in important respects. That quote comes from *U.S. v. Carrot [Carrott],* 25 MJ 823–824 (AFCMR 1988). Accordingly, ... I should say ... I'm reasonably satisfied with the chain of custody of the urine....

## II

■■■ To rebut a chain-of-custody challenge to admission of evidence, the prosecution is not required to "exclude every possibility of tampering." Instead, *Courts* says that its burden is to satisfy the military judge "that in reasonable probability the article ha[s] not been changed in important respects." 9 MJ at 291, quoting *West v. United States,* 359 F.2d 50, 55 (8th Cir.), *cert. denied,* 385 U.S. 867, 87 S.Ct. 131, 17 L.Ed.2d 94 (1966). Where the evidence in question is "fungible,"[1] this degree of assurance may, as a practical matter, be more difficult to reach; indeed, "[g]enerally fungible evidence becomes admissible and material through a showing of continuous custody which preserves the evidence in an unaltered state." *United States v. Nault,* 4 MJ 318, 319 (CMA 1978).

---

**1.** Certainly appellant's urine was "fungible" at that point. There was nothing distinctive about her urine that would differentiate it from other urine or that would differentiate it from her urine which might be tampered with in some way. Further, there was nothing distinctive about its "packaging" that would make it any-

thing other than fungible, since the containers were typical of those provided by the Government for urinalysis inspections. *Cf. United States v. Courts,* 9 MJ 285 (CMA 1980); *United States v. Fowler,* 9 MJ 149 (CMA 1980); *United States v. Nault,* 4 MJ 318 (CMA 1978).

■ The defense attack on appellant's urine focuses on the time between Hall's delivery to the collection station of the urine in the wide-mouth collection container and her initialling the urine as appellant's in the sealed small-mouth container in which the sample was sent to the laboratory. The military judge, however, found as fact that the urine never left Hall's sight from the point at which appellant handed her the sample in the wide-mouth container until she initialed the small-mouth container and that, during that time, the sample was not tampered with in any way. These findings are solidly based on Hall's testimony during follow-up questioning by the military judge as follows:

Q: You remember the accused urinating into the wide mouth container?

A: Yes, sir.

Q: You remember putting the cap on that container?

A: Yes sir.

Q: You remember patting it off?

A: Yes, sir.

Q: And you remember that container— you carrying that container up to where Sergeant Brown was waiting?

A: Yes, sir.

Q: Was the urine specimen that was in that container in any way tampered with or adulterated in any fashion in the time that you had it in your possession?

A: No, sir.

Q: Okay, so the urine specimen is now in the wide mouth container, and do you remember giving it to Sergeant Brown?

A: Yes, sir.

Q: Do you remember observing Sergeant Brown as he was doing the things to the bottle that you testified about earlier?

A: Yes, sir.

Q: Did you keep the specimen in your constant vision while all that was being done?

A: Yes, sir.

Q: And then you initialed the label on that bottle?

A: Yes, sir.

Given the specific findings by the military judge, which are supported by this evidence of record, we are satisfied that the military judge did not err by concluding that the chain of custody during the relevant time period was established. Hall's lack of specific recollection of how appellant's urine got from the wide-mouth container to the small-mouth container goes to the weight of the evidence, as the judge observed; but her specific and unqualified testimony that the urine never left her sight until it was in the small-mouth container and that, to that point, it was not tampered with or adulterated in any fashion leaves no missing link in the chain of custody.[2]

### III

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges COX, CRAWFORD, and GIERKE concur.

See *United States v. Strozier*, 31 MJ 283 (CMA 1990); *United States v. Pollard*, 27 MJ 376 (CMA 1989).

---

**2.** Additionally, as to any claimed deviations from standard collection and custodial procedures, for the same reasons we are equally sure that the military judge did not err by concluding that, nonetheless, the evidence had sufficient reliability to be considered by the factfinders.