# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**F.D. MITCHELL, J.A. FISCHER, K.M. MCDONALD**
**Appellate Military Judges**

**UNITED STATES OF AMERICA**

v.

**EDWIN W. HINOJOS**
**CHIEF CRYPTOLOGIC TECHNICIAN INTERPRETIVE (E-7),**
**U.S. NAVY**

**NMCCA 201300305**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 7 March 2013.
**Military Judge:** LtCol Charles Hale, USMC.
**Convening Authority:** Commandant, Naval District Washington, Washington Navy Yard, Washington, DC.
**Staff Judge Advocate's Recommendation:** LCDR J.D. Pilling, JAGC, USN.
**For Appellant:** CAPT Tierney Carlos, JAGC, USN.
**For Appellee:** Maj David Roberts, USMC; Capt Matthew Harris, USMC.

**27 January 2015**

---------------------------------------------------------
**OPINION OF THE COURT**
---------------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A general court-martial consisting of officer and enlisted members convicted the appellant, contrary to his pleas, of one specification of aggravated sexual assault of a child and one specification of abusive sexual contact of a child, in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C.

§ 920.  The members sentenced the appellant to confinement for seven years and a dishonorable discharge.  The convening authority approved the sentence as adjudged, and, except for the dishonorable discharge, ordered the sentence executed.

The appellant raised eight assignments of error.[1]  After careful consideration of the record of trial, the appellant's assignments of error, the pleadings of the parties and oral argument, we find merit in the appellant's first assignment of error, and will take remedial action in our decretal paragraph.[2]

## Background

HC was a 14-year-old high school freshman and good friends with the appellant's daughter, DH.  HC slept over at the appellant's house nearly every weekend during the spring of 2011, including the weekend of 24 April 2011.  Whenever HC spent

---

[1] (1) That the military judge erred when he allowed the Government's DNA expert to testify that he received a buccal swab from the appellant when the appellant's buccal swab was not admitted into evidence and there was no testimony that a buccal swab was ever obtained from the appellant.  Likewise, the military judge erred when he admitted Prosecution Exhibit 2 into evidence over defense objection.

(2) The military judge erred when he allowed HC to testify to inadmissible hearsay which suggested to the members that the appellant was sexually abusing his own daughter.

(3) The military judge abused his discretion when he denied the defense challenge for cause against LT G without considering the liberal grant mandate and for not *sua sponte* challenging ENS K.

(4) The evidence was factually and legally insufficient to sustain the appellant's convictions.

(5) The military judge abused his discretion when he provided contradictory and misleading answers to the members' questions during sentencing and by failing to give a tailored spillover instruction.

(6) Trial defense counsel was ineffective.

(7) The appellant is currently the subject of post-trial cruel and unusual punishment for failure to treat his alleged post-traumatic stress disorder.

(8) The appellant was subjected to post-trial cruel and unusual punishment because he suffered hearing loss as a result of being denied protective gear.

The appellant's seventh and eighth assignments of error are raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[2] Our corrective action renders assignments of error 2, 3, 5, and 6 moot.  We have considered assignments of error 7 and 8 and find them to be without merit.  *United States v. Clifton*, 35 M.J. 79 (C.M.A. 1992).

2

the night at the appellant's house, she shared DH's bed with her. On 24 April 2011, after watching a movie, the two girls went to bed around 2300. HC slept on her right side with her back to the bedroom door and her feet at the opposite end of the bed from DH's head. She wore her own bra and underwear to bed, but borrowed a pair of DH's pajama pants and shirt.

HC testified that in the middle of the night, she awoke to the feeling of a hand on the left side of her chest. She further testified that the individual then climbed onto the bed, put his hand down the front of her pants and underwear, and penetrated her vagina with his finger up to the point of his knuckle. Throughout this incident, HC never saw the individual's face, however, she identified him as the appellant by the feeling of his "big belly" against her back, and the feeling of his thick, rough hands[3] on her body. HC also testified that she heard the individual say "what" before he left DH's room and recognized the appellant's voice. According to HC, the appellant had also touched her inappropriately on three previous occasions when she slept over at his house. In the first incident, HC awoke to a hand on the right side of her chest; in the second, she awoke to fingers on the inner part of her legs, above her jeans; and in the third incident, she awoke to the feeling of fingers on her vagina, above her clothing. HC identified the appellant as the person who touched her in the first incident because she heard him say "beautiful." HC reported the 24 April assault to her family, then later to the Naval Criminal Investigative Service (NCIS).

Additional facts necessary to resolve the assigned errors are included herein.

### Legal and Factual Sufficiency

We review questions of legal and factual sufficiency *de novo*. *United States v. Winckelmann*, 70 M.J. 403, 406 (C.A.A.F. 2011). We review the legal sufficiency of the evidence by determining "whether, considering the evidence in the light most favorable to the prosecution, any reasonable fact-finder could have found all the essential elements beyond a reasonable doubt." *United States v. Day*, 66 M.J. 172, 173-74 (C.A.A.F. 2008) (citing *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987)). The test for factual sufficiency is whether "after weighing all the evidence in the record of trial, this court is

---

[3] HC had a prior dating relationship with SH, the appellant's oldest son who also lived in the appellant's household at the time of the alleged incidents. HC testified that SH's hands were thin and bony and distinguished the hands that touched her as thick and rough.

3

convinced of the appellant's guilt beyond a reasonable doubt." *United States v. Rankin*, 63 M.J. 552, 557 (N.M.Ct.Crim.App. 2006) (citations omitted), *aff'd*, 64 M.J. 348 (C.A.A.F. 2007).

The term "reasonable doubt" does not mean that the evidence must be free of any conflict. *Id*. And when weighing the credibility of a witness, this court, like a fact-finder at trial, examines whether discrepancies in witness testimony resulted from an innocent mistake such as a lapse of memory or a deliberate lie. *United States. v. Goode*, 54 M.J. 836, 844 (N.M.Ct.Crim.App 2001). Additionally, the members may "believe one part of a witness' testimony and disbelieve another." *United States v. Harris*, 8 M.J. 52, 59 (C.M.A. 1979).

Applying the above test to this case, we are convinced that the evidence was both legally and factually sufficient.

## Expert Witness Testimony

In his first assignment of error, the appellant asserts the military judge abused his discretion by permitting the Government's expert witness to testify that the DNA contained on a buccal swab matched the DNA found in the victim's underwear, without the proper foundation to testify that the buccal swab was taken from the appellant. The appellant also argues the military judge erred in admitting Prosecution Exhibit 2[4] into evidence over defense objection. We agree.

### The Law

Decisions of a military judge to admit or exclude evidence are reviewed for abuse of discretion. *United States v. Eslinger*, 70 M.J. 193, 197 (C.A.A.F. 2011). A military judge abuses his discretion when the "findings of fact are clearly erroneous or his conclusions of law are incorrect." *United States v. Baker*, 70 M.J. 283, 287 (C.A.A.F. 2011) (citation and internal quotation marks omitted). A military judge is responsible for serving as a "gatekeeper" in screening evidence for admission, specifically scientific evidence such as DNA results. *General Electric Co. v. Joiner*, 522 U.S. 136, 142 (1997). Authentication is a condition precedent to admissibility, that is "satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." MILITARY RULE OF EVIDENCE 901(a), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.).

---

[4] Prosecution Exhibit 2 was HC's underwear and the relevant chain-of-custody documents.

4

MIL. R. EVID. 702 allows the admission of expert opinion testimony if it will assist the trier of fact in understanding the evidence or to determine a fact in issue. Experts can offer their opinion or make an inference based on facts or data obtained by the expert at or before trial, so long as the facts or data are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject . . . ." MIL. R. EVID. 703. The expert opinion is admissible even if the relied upon facts or data are not. *Id.*

Discussion

At the trial, the Government called a DNA expert to discuss his work on the case. The expert discussed his laboratory's chain-of-custody protocol for evidence and the tests he conducted in this particular sexual assault case. The expert was then asked whether there was a service member associated with the case, to which the expert provided the appellant's name. The trial judge initially sustained trial defense counsel's objection as to the witness's identification of the appellant on hearsay and foundation grounds. Following that ruling, Government counsel established that the expert recorded his test findings and generated a report for this particular investigation. Government counsel again asked the expert whether there was a service member associated with the buccal swab submitted for testing, to which defense counsel objected as to lack of foundation. The objection this time was overruled, and the expert subsequently testified that he tested a buccal swab from the appellant and found a match between the appellant's Y-STR[5] DNA profile and HC's underwear. Record at 390-97. The buccal swab itself was never offered as evidence and there was no evidence presented to establish that this buccal swab was actually obtained from the appellant.

The Government bears the burden of establishing adequate foundation for admission of evidence against an accused. *United States v. Maxwell*, 38 M.J. 148, 150 (C.M.A. 1993) (citing *United States v. Gonzales*, 37 M.J. 456 (C.M.A. 1993)) (additional citations omitted). Though MIL. R. EVID. 703 permits expert witnesses to offer an opinion or make an inference based on underlying facts that otherwise may be inadmissible, that testimony remains subject to fundamental evidentiary foundation requirements. The Government's expert testified about the tests he conducted on a buccal swab purportedly belonging to the

---

[5] Y-STR DNA testing does not produce a DNA profile unique to an individual. This type of testing narrows DNA down to a male individual's paternal line, which can then be tested for the probability of detecting that profile against a person randomly selected from the United States population.

appellant and offered the opinion that there was a DNA match between the DNA on that buccal swab and the victim's underwear. He did so without the Government having laid any foundation before, during, or after the expert's testimony to establish that the swab had actually been collected from the appellant. Authenticity must be established prior to admission of evidence, whether that evidence is in the form of testimony or physical evidence. Additionally, the proponent of that evidence must present evidence sufficient to support a finding that the evidence is what it purports to be. In the present case, that is, that the buccal swab was taken from the appellant. Absent that conditional authenticity requirement, the risk of prejudice and confusion of the finder of fact is too great to allow admission.

In the appellant's case, the Government failed to provide authenticity evidence for the buccal swab allegedly belonging to the appellant. The source and authenticity of the buccal swab was required before the expert could offer an opinion as to a DNA match involving that swab. Accordingly, we hold that the military judge, without such foundation evidence, abused his discretion in allowing the expert to testify that he tested the DNA found in HC's underwear to the DNA from the buccal swab purportedly belonging to the appellant and that there was a match.

Having found error in the admission of the expert testimony, we now assess for prejudice. "Whether an error, constitutional or otherwise, was harmless is a question of law that we review *de novo*." *United States v. McCollum*, 58 M.J. 323, 342 (C.A.A.F. 2003) (citations omitted). "A finding or sentence of court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused." Art. 59(a), UCMJ. Because this case involves a nonconstitutional error, it is the Government's burden to demonstrate that "the error did not have a substantial influence on the findings." *McCollum*, 58 M.J. at 342.

We evaluate whether the erroneous admission of Government evidence is harmless through a four-part test that weighs: "(1) the strength of the Government's case; (2) the strength of the defense case; (3) the materiality of the evidence in question; and (4) the quality of the evidence in question." *United States v. Berry*, 61 M.J. 91, 98 (C.A.A.F. 2005).

To prove its case, the Government called four witnesses: the alleged victim (HC), an NCIS Special Agent, a DNA expert,

6

and the appellant's son.  Through HC's testimony, the Government established that she slept at the appellant's house on various occasions and that the appellant had touched private parts of her body while she was sleeping on four occasions.  HC identified the appellant as the offender based on several characteristics – his "big belly", "thick fingers", and voice.[6] The NCIS agent's testimony was limited, only covering her attendance at HC's sexual assault forensic examination and her collection of HC's underwear at that examination.  As previously discussed, the DNA expert offered his opinion of a match between the DNA found on HC's underwear and the DNA found on the buccal swab he believed to be from the appellant.  The Government also entered HC's underwear as evidence during the expert's direct examination.  Finally, the appellant's son described his previous dating relationship with HC[7] and testified that he kissed her on the cheek while they dated, but otherwise never engaged in any sexual contact or act with HC, and did not come into contact with HC's underwear that night or any other time.

The defense case relied on creating reasonable doubt as to the identification of the appellant as the assailant through cross-examination of Government witnesses.  Trial defense counsel attacked the lack of evidence brought forward to establish the appellant's identity during her objections in the Government's case in chief, her cross-examination of the Government's DNA expert, and also in a RULE FOR COURT-MARTIAL 917, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.) motion.  The defense also called a child forensic psychologist to provide expert testimony attacking the truth and accuracy of HC's allegations.

The third factor to consider in our prejudice analysis is the materiality of the evidence in question.  Here, that is the Government expert's testimony regarding a DNA match.  The expert's testimony established that DNA from the appellant's paternal line was found on HC's underwear and strongly supported HC's testimony.  The evidence essentially eliminated the possibility that a sexual assault did not occur and narrowed down the possible offenders to just two individuals.  We find the materiality of this forensic evidence was significant as was certainly emphasized by the Government during closing argument. Record at 574-75.  We reject the appellee's claim that the appellant's "conviction was assured even without the DNA

---

[6] HC testified that on two separate occasions, she heard the person who entered the room where she was sleeping say both "what" and "beautiful."

[7] The alleged incidents occurred after HC and the appellant's son broke up.

evidence." Government Brief of 9 Apr 2014 at 17. While it is possible that a reasonable fact-finder could have convicted the appellant without the DNA evidence, this situation involves scientific evidence admitted in error whose influence on the fact-finder by its nature would have been significant. Without the powerful DNA evidence lending support to CH's identification of the appellant as her assailant, the members may well have concluded that there was a reasonable doubt as to the appellant's guilt.

The fourth factor in our prejudice analysis is the quality of the evidence in question. Here, as discussed above, the Government offered expert testimony referencing a tested evidence sample never admitted at trial. Through reference to that sample, the expert was allowed to testify that the appellant's DNA matched DNA found on the victim's underwear, thereby providing identification evidence. The form of DNA testing used here, Y-STR, is not as specific as autosomal testing, but even this lower-quality DNA test enabled the Government to convince the fact-finder of the appellant's guilt beyond a reasonable doubt.

The record of trial depicts a case in which forensic evidence served as significant proof that a crime occurred and identified the appellant as the perpetrator. The Government has not met its burden of demonstrating that judicial error in admitting expert testimony without the underlying foundation did not have "a substantial influence on the findings." *McCollum*, 58 M.J. at 342. Accordingly, the findings of guilty to the charge and two specifications are set aside. The record of trial is returned to the Judge Advocate General for remand to an appropriate convening authority with a rehearing authorized.

For the Court

R.H. TROIDL
Clerk of Court

8